(No. 53161

BLACKHAWK HOTEL ASSOCIATES, Appellant, v.
GERALD S. KAUFMAN, Appellee.

*Opinion filed March 18, 1981.—Rehearing
denied June 4, 1981.*

Bishop & Crawford, Ltd., of Oak Brook (Leslie R. Bishop, John N. Dore, and Carl A. Neumann, of counsel), for appellant.

Schwartz, Cooper, Kolb & Gaynor, Chartered, of Chicago (Ira S. Kolb and Martin W. Salzman, of counsel), for appellee.

MR. JUSTICE CLARK delivered the opinion of the court:

This is an action on a guaranty contract. Plaintiff, Blackhawk Hotel Associates, owned the Blackhawk Hotel, located in Davenport, Iowa. Defendant, Gerald S. Kaufman, guaranteed a portion of the hotel lessee's rental payments. The hotel was subject to a mortgage held by the Davenport Bank and Trust Company (bank). The lessee defaulted on its rental payments. The plaintiff thereafter defaulted on its mortgage payments.

The bank instituted foreclosure proceedings. The plaintiff then demanded performance from the defendant guarantor. Defendant did not pay the rent owed, the

plaintiff did not pay the bank, and the foreclosure proceedings ended with a public judicial sale, at which the bank bought the hotel. No deficiency judgment was entered. Plaintiff brought suit in July 1977 on the guaranty contract. Defendant contended that the terms of the contract released him from liability. Cross-motions for summary judgment were made, and the circuit court of Cook County granted defendant's motion. The appellate court affirmed. (80 Ill. App. 3d 462.) Plaintiff's petition for leave to appeal to this court was granted, and we now reverse the judgments of the appellate and circuit courts and remand the cause for further proceedings.

The facts are contained in the complaint, the answer as amended, which included several affirmative defenses, plaintiff's reply, both parties' answers to interrogatories, and various affidavits and exhibits. The complaint, the answers, and the reply were all verified.

Plaintiff is a limited partnership organized pursuant to the laws of the State of Massachusetts. It owned and operated the Blackhawk Hotel (hotel) in Davenport, Iowa. In 1975 the hotel apparently experienced financial difficulties, and Knightsbridge Realty Partners, Ltd.-75 agreed to invest $300,000 in return for acquiring a 50.1% interest in the plaintiff partnership and becoming the general partner. The general partners of the plaintiff (before this agreement was made), in turn, became limited partners and relinquished their controlling interest in the partnership. Through a corporation they controlled, however, Knightsbridge Hotels of Iowa, Ltd., a Delaware corporation, they agreed to lease and operate the hotel. The negotiations were begun and concluded in late December 1975. Article IV of the lease between plaintiff and the corporation formed by its former general partners (lessee) stated in pertinent part:

"Section 1. *Basic Rental.*
From and after the commencement of this Lease,

Lessee shall pay to Lessor an aggregate annual basic rental ("Basic rental") of the sum of (a) THIRTY THOUSAND AND 00/100 DOLLARS ($30,000.00) payable in equal monthly installments commencing on February 1, 1976 and on the first day of each and every month thereafter, provided, however, that if the term hereof shall commence prior to February 1, 1976, the first monthly payment of rent hereunder shall in addition include payment for the time between the date of commencement and February 1, 1976, and (b) the annual payments of or provision for principal and interest due under:

1.) promissory notes of Lessor dated 27 January 1975 in the amount of $825,000, and 8 July 1975 in the amount of $175,000, both secured by Deed of Trust to Davenport Bank and Trust Company dated 27 January 1975, and

2.) note of Lessor dated 27 January 1975 in the amount of $1,250,255.00, secured by Mortgage dated 27 January 1975 to Small Business Administration, as the schedules of payments thereunder now require."

Defendant guaranteed the payment of the "Basic Rental." The following contract, not one of standard form, was originally drafted by plaintiff's attorney, and was signed by defendant after he reviewed and revised it:

### "GUARANTY

In consideration of the making of the foregoing Lease by and between Blackhawk Hotel Associates ("Lessor") and Knightsbridge Hotels of Iowa, Ltd. ("Lessee"), the undersigned Gerald S. Kaufman, an individual resident in the State of Illinois, at the request of Lessor, and in reliance of Lessor on this Guaranty, hereby unconditionally guarantees payment of the Basic Rental described in Section 1 of Article IV of said Lease to the Lessor. Any assignment or assignments and successive assignments of the Lease, or any sale of the premises which are the subject of the Lease, or if the General Partner of the Lessor ceases to own at least 50.1% of its Partnership interest in the Lessor, shall release the undersigned from liability as guarantor.

Notwithstanding the forgeoing this Guaranty shall expire:

(a) at the end of two years from the date hereof, or

(b) when such amount of Basic Rent due and payable during the two-year period commencing on the date hereof has been paid.

whichever is later.

This Guaranty shall be governed by and construed and interpreted in accordance with the laws of the State of Illinois."

Although the record is unclear on this point, the parties also apparently executed a collateral assignment of the lease, by which defendant had the option, in the event of lessee's default, of operating the hotel. This document is referred to in the affidavits and in plaintiff's motion for summary judgment, but is not contained in the record, and we therefore decline to afford it any significance.

After the execution of these documents, the operation of the hotel again apparently became unprofitable, and lessee did not pay the rent after the end of February 1976. Subsequently plaintiff defaulted in its payments due to the bank. The bank initiated foreclosure proceedings in the Scott County district court of Iowa, on June 22, 1976. On June 25, plaintiff demanded payment from defendant. Defendant never performed his obligations as owed under the contract. The hotel was sold at a public judicial sale on October 5, 1976.

The sheriff's return on execution indicated what was sold:

"[the hotel], [a]ll accounts receivable, contract rights, documents, instruments, chattel paper, general intangibles, inventory, machinery, furniture, fixtures, equipment, more fully described in one Bill of Sale dated January 27, 1975, a copy of which is attached to the Petition in Equity of Plaintiff [the bank] in the above-captioned cause as Exhibit 'K' on file in the office of the Clerk of the above-captioned Court, including all substitutions thereof and additions thereto, whether then owned or thereafter acquired and whether then existing or thereafter arising, together with the proceeds thereof, including the personal property identified in Exhibit 'C' to the Final Report and Accounting of Receiver filed July 12, 1976 in the above-

captioned proceedings in the office of the Clerk of the above-captioned Court."

Neither exhibit C nor exhibit K was submitted on the record.

The appellate court held that the "any sale" provision of the guaranty precluded finding defendant liable. It reasoned that this provision encompassed sales held pursuant to foreclosure proceedings. (80 Ill. App. 3d 462, 465-66.) Plaintiff does not challenge this holding, and we therefore will not discuss this issue. In addition, because the parties have not raised these issues, we assume for purposes of this case that plaintiff, rather than the bank, is still owed the rent due prior to the sale and that the judicial sale held on October 5 is to be treated for all purposes as any other sale.

Plaintiff's argument in this court is that defendant should be estopped from relying on the "any sale" terms of the agreement because defendant's failure to perform caused the sale's occurrence, or that defendant should at least be liable for the rent which accrued prior to the sale. Defendant's argument is simply that plaintiff has waived the estoppel contention, an argument repetitive of its answer to the petition for leave to appeal, or, alternatively, that the estoppel argument is without merit. It is defendant's contention that the appellate court implicitly found that the "any sale" provision extinguished accrued, as well as prospective, liability.

A guaranty contract is to be interpreted "according to the standards that govern the interpretation of contracts in general." (Restatement of Security sec. 88 (1941); L. Simpson, Suretyship secs. 29 to 30 (1950); *State Bank of East Moline v. Cirivello* (1978), 74 Ill. 2d 426, 431.) Thus our duty is to effectuate, if ascertainable, the intent of the parties to the contract. *Martindell v. Lake Shore National Bank* (1958), 15 Ill. 2d 272, 283; *Dora Township v. Indiana Insurance Co.* (1980), 78 Ill. 2d 376, 378-79.

It is clear that the appellate court held, without saying so, that the foreclosure sale was a condition (see *State Bank of East Moline v. Cirivello* (1978), 74 Ill. 2d 426, 431) designed to discharge all liability, whether accrued or unaccrued. (See Restatement of Contracts sec. 250(b) (1932); Restatement (Second) of Contracts sec. 250(e) (Tent. Draft No. 7, 1972); see generally *Dethloff v. Zeigler Coal Co.* (1980), 82 Ill. 2d 393, 401-05.) It is not clear from the contract, however, whether the event of a sale should be considered a condition subsequent, *i.e.,* an event discharging liability, or whether the nonoccurrence of the sale should be treated as a condition precedent to the accrual of liability. (See Restatement of Contracts sec. 259 (1932).) Nevertheless, the result we reach here would be the same regardless of how we interpret the provision.

If the nonoccurrence of the sale is considered a condition precedent, defendant would be liable as each duty for immediate performance arose until the sale took place. Therefore, the occurrence of the sale would not extinguish accrued liability because the condition precedent had not failed as to the prior duties to render immediate performance.

Assuming that the parties intended a true condition subsequent, our analysis would lead to the same result. Under both the first and second Restatements, a condition which would otherwise terminate the promisor's duty will not do so if the happening of the condition is caused or rendered inevitable by the promisor's unjustified conduct. See Restatement of Contracts sec. 307(a) (1932); Restatement (Second) of Contracts sec. 255A (Tent. Draft No. 13, 1978); see also Restatement of Contracts sec. 295 (1932); Restatement (Second) of Contracts sec. 269 (Tent. Draft No. 8, 1973); 5 Williston, Contracts secs. 677 to 677B (W. Jaeger 3d ed. 1961); 3A Corbin, Contracts secs. 767 to 769 (1960); *Foreman State Trust*

*& Savings Bank v. Tauber* (1932), 348 Ill. 280.

The rental provision in the lease clearly referred to promissory notes secured "by Deed of Trust to Davenport Bank and Trust Company." One portion of the "Basic Rental," as set forth in the lease, was earmarked to pay the mortgage. Defendant guaranteed this same "Basic Rental." The parties here, moreover, did not manifest an awareness that defendant would fail to perform, if called upon. Rather, the only reasonable purpose of the guaranty contract was to shift to the guarantor the risk that the hotel would prove unprofitable to the lessees during the first two years of its operation, thereby preventing the foreclosure of the hotel in the event of lessees' default. The "any sale" provision, consistent with this analysis, has an effect similar to an anti-assignment clause. Along with the provision ending the guarantor's liability if the plaintiff's general partner ceased to own 50.1% of the partnership, it ensures that the guarantor's risk, as affected by a change in lessors, will not be altered without his assent. See generally *Burkhardt v. Bank of America National Trust & Savings Association* (1953), 127 Colo. 251, 256 P.2d 234; Annot. 41 A.L.R.2d 1213 (1955); compare *Essex International, Inc. v. Clamage* (7th Cir. 1971), 440 F.2d 547 (applying Illinois law), with *Second National Bank of Peoria v. Diefendorf* (1878), 90 Ill. 396.

Our analysis of the purpose of the clause can lead to only one conclusion as to the effect of defendant's breach of contract, for if the purpose of the clause were to shift the risk of the hotel's possible unprofitability to the defendant guarantor, thereby preventing the foreclosure of the hotel, it is difficult to conceive how the failure of defendant to perform would not cause the hotel's foreclosure. (See generally *Foreman State Trust & Savings Bank v. Tauber* (1932), 348 Ill. 280, 285-87; *Shear v. National Rifle Association of America* (D.C. Cir. 1979), 606 F.2d 1251.) The facts here bear out this conclusion.

When defendant first alleged the sale of the property as its second affirmative defense, plaintiff, in its reply to it, stated:

> "The property which is the subject matter of Exhibit 1 attached to the Complaint has been acquired pursuant to certain foreclosure proceedings instituted by said bank in the Scott County District Court for the State of Iowa. Said foreclosure proceedings were caused by the Defendant's failure to meet the terms and conditions of the guarantee [*sic*] referred to in plaintiff's complaint."

In defendant's amended answer and affirmative defenses, it is stated simply: "1. That the property which is the subject matter of Exhibit 1 to the complaint has been sold. 2. That pursuant to the terms of the guaranty attached to Exhibit 2 to the complaint, the defendant Kaufman is released of any and all liability." Plaintiff, in its reply to this document, again stated, in pertinent part, that "[s]aid foreclosure proceedings were caused by the defendant's failure to meet the terms and conditions of the guarantee referred to in plaintiff's Complaint." Defendant has never contravened this contention, and we therefore view defendant's reliance on the "any sale" provision as misplaced. Defendant argues that plaintiff failed to demand performance until after the initiation of foreclosure proceedings. That fact, however, does not negate plaintiff's argument that it was defendant's failure to perform which caused and rendered inevitable the sale of the hotel, and the acceptance of such an argument here would transform the guaranty into a purposeless document.

The foregoing facts were argued by the plaintiff in the trial court, and they constituted part of the record in the appellate court. Under these circumstances, plaintiff cannot be considered to have waived these contentions. See *People ex rel. Resnik v. Curtis & Davis, Architects & Planners, Inc.* (1980), 78 Ill. 2d 381, 383.

Plaintiff, however, cannot recover damages for rent liability which might have accrued after the foreclosure

sale. The rent here was owed in monthly installments. Installment-payment contracts like this one generally are breached one installment at a time. (*Quick v. American Steel & Pump Corp.* (2d Cir. 1968), 397 F.2d 561, 564; Restatement of Contracts secs. 316, 318 (1932).) We note, too, that the guaranty contract contains no provision for the acceleration, upon the guarantor's default, of the payments owed. (See Restatement (Second) of Contracts sec. 268, comment *c* (Tent. Draft No. 8, 1973.) Therefore, considering only the "any sale" provision of the guaranty contract, defendant is liable, as plaintiff argues, for the rent owed from the time he "was given notice under his guaranty" until October 5, the date of the judicial sale. See *Hilgenberg v. Iowa Beef Packers, Inc.* (Iowa 1970), 175 N.W.2d 353, 356, quoting *Kollman v. McGregor* (1949), 240 Iowa 1331, 1334-35, 39 N.W.2d 302, 304.

The judgments of the appellate and circuit courts are reversed. Other affirmative defenses were presented by defendant in the trial court and have not been argued on these appeals; therefore the cause is remanded to the circuit court for proceedings consistent with this decision.

*Reversed and remanded.*

MR. JUSTICE SIMON took no part in the consideration or decision of this case.