BONNIE LUBEZNIK, Plaintiff-Appellee, v. HEALTHCHICAGO, INC., d/b/a HealthChicago, Defendant-Appellant.

First District (4th Division)   No. 1—91—3878

Opinion filed December 1, 1994.

---

[1]Justice Johnson participated in the disposition of this case prior to his retirement.

Kathleen T. Zellner and Daniel F. DeLay, both of Kathleen T. Zellner & Associates, of Naperville, for appellant.

Arthur M. Gorov and Norman N. Berkson, both of Berkson, Gorov & Levin, Ltd., of Chicago, for appellee.

JUSTICE JOHNSON delivered the opinion of the court:

Plaintiff, Bonnie Lubeznik, filed this action in the circuit court of Cook County seeking a permanent injunction requiring defendant, HealthChicago, Inc., to precertify her for certain medical treatment. Following a hearing, the trial court granted the injunction. Defendant appeals, contending the trial court improperly (1) determined that the requested treatment was a covered benefit under plaintiff's insurance policy; (2) interpreted portions of the Illinois Health Maintenance Organization Act (Ill. Rev. Stat. 1991, ch. $111^1/2$, par. 1401 et seq.); (3) excluded certain testimony as hearsay evidence; and (4) granted the injunction.

We affirm.

The record reveals that in November 1988 plaintiff was diagnosed with Stage III ovarian cancer. At the time of her diagnosis, the cancer had spread through her abdomen and liver and she had a 20% survival rate over the next five years. Plaintiff underwent a surgical procedure known as debulking, during which cancerous tumors were removed to promote maximum results for chemotherapy. She then received chemotherapy and underwent additional surgery, which her doctors determined had failed. Plaintiff's doctors then unsuccessfully attempted several other treatment methods including intraperitoneal cisplatin therapy, which involves injecting chemotherapy agents directly into the abdomen.

In June 1991, plaintiff was referred to Dr. Patrick Stiff, the director of the bone marrow treatment program at Loyola University Medical Center (hereinafter Loyola). Dr. Stiff sought to determine the prospect of treating plaintiff with high dose chemotherapy with autologous bone marrow transplant (hereinafter HDCT/ABMT). HDCT/ABMT is a procedure where bone marrow stem cells are removed from the patient's body and frozen in storage until after the patient has been treated with high dose chemotherapy. Following chemotherapy, which destroys the cancer, the marrow previously extracted is reinfused to proliferate and replace marrow destroyed by the chemotherapy. HDCT/ABMT had been a state-of-the-art treat-

ment for leukemia and Hodgkin's disease for many years. It began to be used in the late 1980's for women who were in the late stages of breast cancer.

Dr. Stiff examined plaintiff but decided to forgo the HDCT/ABMT until an attempt was made to decrease the mass of tumors by using Carboplatin, an outpatient chemotherapy treatment. After plaintiff received three cycles of Carboplatin, Dr. Stiff observed very slight improvement in her condition. Plaintiff then sought treatment in a University of Chicago program, but was rejected for the program because of irregularities in her heartbeat. Thereafter, she returned to Dr. Stiff seeking inclusion in his HDCT/ABMT program.

On October 28, 1991, Dr. Stiff contacted defendant requesting that it precertify plaintiff for the HDCT/ABMT, *i.e.*, agree in advance to pay for the treatment. Plaintiff's insurance policy required her to get precertified before receiving elective treatment, procedures and therapies. Dr. Wayne Mathy, defendant's medical director, received Dr. Stiff's precertification request and telephoned him shortly thereafter. During his conversation with Dr. Stiff, Dr. Mathy stated that the HDCT/ABMT was not a covered benefit under plaintiff's insurance policy because the treatment was considered experimental.

On October 31, 1991, plaintiff filed a two-count complaint against defendant and Loyola. In count I, plaintiff sought a mandatory injunction against defendant to precertify her for the HDCT/ABMT. In her second count, plaintiff sought an injunction against Loyola to admit her for medical treatment without a deposit of $100,000. Both defendant and Loyola filed motions to dismiss plaintiff's complaint. Subsequently, plaintiff took a voluntary nonsuit against Loyola.

Following a hearing, the trial court denied defendant's motion to dismiss and defendant filed its answer *instanter*. Thereafter, a hearing on the complaint was held at which Dr. Stiff testified that the HDCT/ABMT was an effective treatment for plaintiff given that all conventional treatments for her had been exhausted. He stated that he had performed 21 HDCT/ABMT procedures on patients with Stage III ovarian cancer, and as a result, 75% of those patients were in complete remission.

During further testimony, Dr. Stiff opined that the HDCT/ABMT was not experimental and presented documents and literature in support of his testimony. Dr. Stiff also presented a letter from the American Medical Association indicating that autologous bone marrow was an appropriate method for managing bone marrow in patients undergoing treatment for cancer. He also opined that the HDCT/ABMT was accepted as a standard treatment for patients with ovarian cancer.

Dr. Mathy testified at the hearing that his responsibilities as defendant's medical director included determining whether a requested medical treatment is covered under an insurance policy issued by defendant. He stated that after he received plaintiff's request for precertification, a member of defendant's benefit analysis staff contacted the National Institute of Health, the National Cancer Institute, and Medicare seeking an assessment as to whether the requested treatment was experimental. According to Dr. Mathy, defendant determined that the HDCT/ABMT was experimental based on information received from those medical assessment bodies. Dr. Mathy also stated that he spoke with Dr. Harry Long of the Mayo Clinic concerning the HDCT/ABMT procedure. When defendant's counsel attempted to question Dr. Mathy concerning contents of his conversation with Dr. Long, plaintiff objected on the basis that the evidence was hearsay. The trial court sustained the objection.

During cross-examination, Dr. Mathy testified that he first learned on October 29, 1991, that Dr. Stiff was contemplating treating plaintiff with HDCT/ABMT. Dr. Mathy admitted that immediately upon learning of the proposed treatment, he decided that the HDCT/ABMT was experimental and that plaintiff's precertification request should be denied. Dr. Mathy stated that he did not consult with the National Institute of Health or the National Cancer Institute before making the decision to deny plaintiff's request.

At the conclusion of the testimony, the parties presented final arguments to the trial court. Subsequently, the trial court issued an injunction against defendant ruling that the HDCT/ABMT is neither an experimental therapy for ovarian cancer, nor a transplant within the meaning of Illinois Health Maintenance Organization Act (Ill. Rev. Stat. 1991, ch. 111½, par. 1408.5) (hereinafter the Act). Defendant then filed this appeal.

Defendant initially argues that the trial court erroneously determined that the HDCT/ABMT procedure is a covered benefit under plaintiff's insurance policy. Defendant claims it supported its determination that the procedure is experimental with similar conclusions by appropriate medical technology boards as required by plaintiff's insurance contract. Plaintiff's insurance policy provides that "[e]xperimental medical, surgical, or other procedures as determined by the [Insurance] Plan in conjunction with appropriate medical technology assessment bodies" are excluded from coverage. Defendant contends that the trial court improperly disregarded the terms of the insurance contract, which, defendant argues, were clear and unambiguous.

At the outset, we note that coverage provisions in an insurance

contract are to be liberally construed in favor of the insured to provide the broadest possible coverage. (See *United States Fidelity & Guaranty Co. v. Wilkin Insulation Co.* (1991), 144 Ill. 2d 64.) In determining whether a certain provision in an insurance contract is applicable, a trial court must first determine whether the specific provision is ambiguous. (*Economy Fire & Casualty Co. v. Kubic* (1986), 142 Ill. App. 3d 906, 909.) A provision which is clear or unambiguous, *i.e.*, fairly admits but of one interpretation, must be applied as written. (*American Standard Insurance Co. v. Allstate Insurance Co.* (1991), 210 Ill. App. 3d 443, 446.) However, where a provision is ambiguous, its language must be construed in favor of the insured. *JG Industries, Inc. v. National Union Fire Insurance Co.* (1991), 218 Ill. App. 3d 1061, 1065.

Moreover, where an insurer seeks to deny insurance coverage based on an exclusionary clause contained in an insurance policy, the clause must be clear and free from doubt. (*American Standard Insurance Co.*, 210 Ill. App. 3d at 446.) This is so because all doubts with respect to coverage are resolved in favor of the insured. (*Outboard Marine Corp. v. Liberty Mutual Insurance Co.* (1992), 154 Ill. 2d 90, 119.) As this court held in *Economy Fire & Casualty Co. v. Kubic* (1986), 142 Ill. App. 3d 906, 909, an exclusionary clause may be applied only where its terms are clear, definite and explicit.

■ After carefully reviewing the evidence, we cannot agree with defendant that the trial court improperly determined the HDCT/ABMT to be a covered benefit under plaintiff's insurance policy. First, we disagree with defendant that the exclusionary language was clear and unambiguous. We note that the plaintiff's insurance policy does not define the phrase "appropriate medical technology boards." The plain language of the policy does not indicate who will determine whether a certain medical board is appropriate. Further, the policy fails to outline any standards for determining how a medical board is deemed appropriate. Thus, the phrase, without more, gives rise to a genuine uncertainty about which medical boards are considered appropriate and how and by whom the determination is made.

Second, despite defendant's argument to the contrary, the exclusionary language in plaintiff's insurance contract varies significantly from the language in section 4—5 of the Act, which provides as follows:

> "No contract or evidence of coverage issued by a health maintenance organization which provides coverage for health care services shall deny reimbursement for an otherwise covered expense incurred for any organ transplantation procedure solely on the basis that such procedure is deemed experimental or investiga-

tional, *unless supported by the determination of the Office of Health Care Technology Assessment within the Agency for Health Care Policy and Research within the federal Department of Health and Human Services that such a procedure is either experimental or investigational* \*\*\*." (Emphasis added.) (Ill. Rev. Stat. 1991, ch. 111¹/₂, par. 1408.5.)

Unlike plaintiff's insurance contract, the Act specifically provides which agency has the authority to determine whether a procedure is experimental.

Third, we must note that even if the exclusionary language did apply, defendant failed to follow the terms of the insurance policy. Plaintiff's insurance policy excludes from coverage medical and surgical procedures that are considered experimental by defendant "in conjunction with appropriate technology assessment bodies." At the hearing, Dr. Mathy testified that upon learning of plaintiff's precertification request, he had already determined that the HDCT/ABMT was experimental prior to receiving or reviewing any information from the medical assessment boards. Given our careful review of the evidence, including defendant's admitted disregard for the terms of the insurance policy, we hold that the trial court did not err in ruling that the requested treatment was a covered benefit under the policy.

Next, defendant claims the trial court erred in holding that an autologous bone marrow transplant (ABMT) is not an organ transplantation procedure within the meaning of section 4—5 of the Act. Defendant correctly notes that this is case of first impression in this State. Even so, our research persuades us that the trial court did not err in concluding that the ABMT is not a transplant.

■ At the hearing on defendant's motion to dismiss, Dr. Stiff specifically testified that the ABMT procedure, although technically called a transplant, is not a transplant. He opined that the ABMT is a "rescue procedure" and described it as a procedure where a patient donates bone marrow to himself or herself, unlike a transplant in which something is taken from one patient and given to another. We must note that at the hearing on plaintiff's complaint, defendant did not present any evidence to rebut Dr. Stiff's testimony that the procedure is not a transplant.

Moreover, a transplantation is technically defined as follows:

"[A]n act, process, or instance of transplanting or being transplanted: as **a** : a magical cure of a disease by causing it to pass from the afflicted person to another[;] **b** : the removal of tissue from one part of the body or from one individual and its implantation or insertion in another \*\*\*." (Webster's Third New International Dictionary 2430 (1981).)

Hence, based on both this technical definition and Dr. Stiff's description of the ABMT procedure which went unchallenged at the hearing, we find no error in the trial court's holding that the ABMT is not a transplant.

In its third contention of error, defendant claims the trial court improperly precluded Dr. Mathy from testifying about his communications with Dr. Harry Long. Defendant argues that the testimony was not hearsay, but evidence of verbal acts, *i.e.*, *res gestae*, and, therefore, admissible to demonstrate defendant's compliance with the terms of the insurance policy. Defendant also argues that the trial court improperly proceeded to a hearing on the complaint for an injunction despite counsel's representations that Dr. Long would not be available to testify until the following week.

■ We reject defendant's argument and hold that the trial court properly precluded Dr. Mathy from testifying concerning the contents of his communications with Dr. Long. First, the rule against hearsay prevents a litigant from offering an out-of-court statement to prove the truth of the matter asserted therein. (*Bafia v. City International Trucks, Inc.* (1994), 258 Ill. App. 3d 4, 9.) Without question, defendant attempted to prove that the HDCT/ABMT is considered experimental by having Dr. Mathy testify concerning Dr. Long's opinion to that effect, which was given during their telephone conversation. This was certainly hearsay and, therefore, inadmissible.

Second, we note that in *Swartzberg v. Dresner* (1982), 107 Ill. App. 3d 318, this court held that the term "*res gestae*" is no longer in use and has been replaced with "the principle that under certain conditions what has been characterized as 'spontaneous declarations' or 'excited utterances' are properly admissible as an exception to the hearsay rule." (*Dresner*, 107 Ill. App. 3d at 325.) The exception is inapplicable here as it requires that the statement or communication sought to be introduced be spontaneous and unreflecting.

■ Similarly, we reject defendant's argument that the trial court unfairly denied defendant an opportunity to have Dr. Long available to testify. First, we note that defendant never specifically requested additional time to secure Dr. Long's testimony. Second, when the trial court proceeded to a hearing on plaintiff's complaint for an injunction, defendant did not object on the basis that it needed additional time to have Dr. Long available to testify. Consequently, defendant has waived this issue for appellate review. See *Akers v. Atchison, Topeka & Santa Fe Ry. Co.* (1989), 187 Ill. App. 3d 950.

Lastly, defendant claims that the trial court improperly granted the mandatory injunction because plaintiff failed to meet the requirements for an injunction to issue. An injunction may be

granted only after the plaintiff establishes that (1) a lawful right exists; (2) irreparable injury will result if the injunction is not granted; and (3) his or her remedy at law is inadequate. (*Wilson v. Illinois Benedictine College* (1983), 112 Ill. App. 3d 932, 937.) We recognize that injunctions are extraordinary remedies which lack judicial favor and are granted when the trial court, in its discretion, determines that "the urgency of the situation necessitates such action." (*Sadat v. American Motors Corp.* (1984), 104 Ill. 2d 105, 116.) Unless the trial court abused its discretion and held contrary to the manifest weight of the evidence, a court of review should not set aside an injunction. *Millard Maintenance Service Co. v. Bernero* (1990), 207 Ill. App. 3d 736, 743-44.

In the present case, defendant argues that plaintiff failed to meet the first two requirements for an injunction to issue. In support, it claims plaintiff failed to show she had a right to the treatment because she had not established that she met the eligibility requirements for inclusion in Dr. Stiff's HDCT/ABMT program. Also, defendant insists that plaintiff failed to prove that irreparable injury would occur if the injunction was not granted. Based on our review of the evidence, we disagree.

■ At the hearing, Dr. Stiff testified that given the steady development of plaintiff's disease, it was imperative to begin the HDCT/ABMT treatment as quickly as possible. He opined that delaying the HDCT/ABMT any further might have rendered plaintiff ineligible for such treatment due to further development of the disease. Based on our understanding of Dr. Stiff's testimony, we do not believe, as defendant now posits, that plaintiff was not eligible for the treatment.

Moreover, Dr. Stiff further testified that the HDCT/ABMT was an effective treatment for plaintiff and offered her a "very high chance of hav[ing] a complete disappearance of her disease." In addition, when asked during direct examination to give a prognosis of plaintiff's condition, Dr. Stiff gave the following response:

> "[Plaintiff] has a fatal illness with a zero percent to one percent chance of being alive, in being alive at five years, let alone alive and disease free."

Given the evidence presented at trial, including Dr. Stiff's testimony, we do not agree with defendant that plaintiff failed to show she would suffer irreparable harm without the treatment. (Compare *Bells Fuels, Inc. v. Butkovich* (1990), 201 Ill. App. 3d 570, 572-73 (where the plaintiff's request for an injunction was denied given that it was based on a "speculative possibility of injury").) Therefore, we hold that the trial court did not abuse its discretion in granting the requested injunctive relief.

For the foregoing reasons, the judgment of the trial court is affirmed.

Affirmed.

HOFFMAN, P.J., and CAHILL, J., concur.