**Joan R. FRENDREIS, Plaintiff,**

v.

**BLUE CROSS BLUE SHIELD OF MICHIGAN, Defendant.**

**No. 94 C 6690.**

United States District Court,
N.D. Illinois,
Eastern Division.

Jan. 12, 1995.

Arthur M. Gorov, Berkson, Gorov & Levin Ltd., Chicago, IL, for Joan R. Frendreis.

Raymond J. Kelly, Jr., Linda P. Kurtos, Seyfarth, Shaw Fairweather & Geraldson, Chicago, IL, for Blue Cross Blue Shield of Michigan.

## MEMORANDUM OPINION AND ORDER

MAROVICH, District Judge.

Plaintiff Joan R. Frendreis ("Frendreis") brought this action seeking a determination of her right to coverage under a medical insurance plan issued by Blue Cross Blue Shield of Michigan ("BCBSM"). Frendreis seeks coverage for a procedure which will treat her life-threatening breast cancer. The procedure is a form of high dose chemotherapy supported by peripheral stem cell recovery ("HDCT/PSCR"). BCBS asserts that the procedure is not covered under her policy because it is experimental in nature and because certain riders were issued to Frendreis

subsequent to the effective date of her coverage which specifically excluded HDCT/PSCR for breast cancer. Frendreis claims that the original policy does not explicitly exclude coverage for HDCT/PSCR and that the policy is ambiguous. She further claims that any riders which were sent subsequent to the policy were not supported by consideration and therefore cannot modify or alter her coverage. BCBS moved for judgment on the pleading and Frendreis responded and cross-moved for summary judgment.[1]

This Court set an expedited briefing schedule and short ruling date in order to address the matter as quickly as possible recognizing that time is of the essence for the Plaintiff. The Court has reviewed the parties' submissions and denies BCBSM' motion for judgment on the pleading and grants Plaintiff's cross-motion for judgment on the pleading.

### BACKGROUND

Effective October 1, 1991, Frendreis became eligible for medical and health care services under a Non–Group Comprehensive Health Care Benefits program offered by Defendant, Blue Cross Blue Shield of Michigan. Frendreis' coverage is outlined in the contract "Non Group Comprehensive Health Care Benefits Certificate" and subsequent "Riders." This Certificate did not contain any specific exclusions for HDCT/AMBT or HDCT/PSCR but did contain an exclusion for coverage of treatments which were determined by BCBSM to be experimental or investigational in nature. The Clause reads:

Experimental Services

Services which we determine to be experimental or investigational are not covered by this Certificate. Please see the definition in "The Language of Health Care" in this book.

Prior and subsequent to the effective date of Frendreis' coverage with BCBSM, Frendreis had been receiving treatment for metastatic breast cancer by way of chemotherapy and otherwise since 1983. BCBSM was aware of Frendreis' breast cancer and her treatments.

On October 10, 1994, Dr. Jacob Bitran, on behalf of Frendreis, requested confirmation of coverage for the contemplated treatment of her Stage IV breast cancer by way of HDCT/PSCR. High dose chemotherapy involves the administration of extremely high, potentially toxic, doses of chemotherapy in an effort to eradicate cancer cells. The chemotherapy also kills bone marrow which produces white blood cells to protect the body from infection. Thus, if high dose chemotherapy is administered without some additional treatment to regenerate bone marrow, the patient has little, if any, chance of surviving the treatment.

Autologous bone marrow transplant ("ABMT") and peripheral stem cell recovery ("PSCR") are two methods used to regenerate bone marrow. With ABMT, prior to the administration of high dose chemotherapy, healthy bone marrow is removed from the patient who is placed under general anesthesia while marrow is extracted by needle. Stem cells are removed from the bone marrow and frozen. The cells are then reintroduced into the body intravenously following chemotherapy for the purpose of causing the patient's bone marrow to regenerate.

The same result can be achieved through PSCR which involves a process similar to collecting blood. With PSCR, the stem cells are harvested from the patient's blood which is removed by placing a catheter in the patient's neck. This process does not require general anesthesia. As with ABMT, the

---

1. The Court notes that Frendreis moved for summary judgment along with her response to the motion for judgment on the pleading. However, the Court will not construe the motion as a motion for summary judgment for the following reasons. First, recognizing that a short briefing schedule was set, the parties were not prepared to present a motion for summary judgment nor did the Court set a briefing schedule for such a motion. Second, the parties have not engaged in the necessary discovery essential to a proper

motion for summary judgment. Finally, a motion for summary judgment in this district must comply with Local Rule 12 and an accompanying statement of material facts with requisite supporting materials must be attached. Frendreis has not attached such a statement, nor does the Court believe that she could because discovery has not begun. The Court will therefore treat the motion as a motion for judgment on the pleading as was originally filed by Defendant and a cross-motion for judgment on the pleading.

stem cells are reintroduced intravenously following chemotherapy.

On October 17, 1994, Dr. Seymour S. Adelson, Associate Director of BCBSM, denied coverage of the Procedure. In coming to this conclusion, Dr. Adelson reviewed the following: the relevant information, including the specific protocol describing Frendreis' proposed procedure, Protocol 2209 "Phase I Study of High Dose Thiotepa, Novantrone, and Taxol ('TNT') with Peripheral Stem Cell Support in the Treatment of Patients with Refractory Malignancies," Frendreis' consent form for the procedure; and current authoritative literature on the procedure. As Dr. Adelson explained in his letter denying coverage, Frendreis' treatment was not covered under the Plan because it was not medically necessary as it was experimental and investigational. Additionally, Dr. Adelson denied coverage to Frendreis based on Rider BMT, which did not provide payable benefits for such a treatment. Simply stated, Dr. Adelson denied coverage of Frendreis' treatment because he believed it was not a benefit provided under the Plan.

On October 24, 1994, Frendreis brought suit against BCBSM in the Circuit Court of Cook County, seeking a mandatory injunction enjoining denial of coverage and declaratory judgment that BCBSM's denial is arbitrary, capricious, unreasonable, and vexatious. On November 8, 1994, BCBSM removed this matter to the United States District Court for the Northern District of Illinois, Eastern Division, based on diversity jurisdiction.

### DISCUSSION

When addressing a motion for judgment on the pleading, the Court assumes to be true all well pleaded factual allegations in the nonmovant's pleading. 5A Charles A. Wright & Arthur R. Miller, Federal Practice & Procedure § 1368 at 520 (Civil 2d 1990). The motion parallels a Rule 12(b)(6) motion in that the court will grant a motion for judgment on the pleading when "it appears beyond a doubt that the plaintiff can prove no set of facts which would entitle him to relief." Conley v. Gibson, 355 U.S. 41, 45–46, 78 S.Ct. 99, 102, 2 L.Ed.2d 80 (1957).

The construction of insurance policies presents questions of law to be decided by the court. Transamerica Ins. Co. v. South, 975 F.2d 321, 327 (7th Cir.1992) (cites omitted). When analyzing an insurance policy, unless the language is ambiguous, we will construe the policy according to the plain and ordinary meaning of its terms. Playboy Enterprises, Inc. v. St. Paul Fire & Marine Insurance Company, 769 F.2d 425 (7th Cir. 1985). Furthermore, the court will "presume that the provisions are purposefully inserted and that language was not employed idly." State Farm Mut. Auto. Ins. Co. v. Schmitt, 94 Ill.App.3d 1062, 50 Ill.Dec. 493, 495, 419 N.E.2d 601, 603 (1981).

Frendreis asserts that the policy is ambiguous as to whether PSCR is covered as a treatment for her chemotherapy. The policy does not explicitly exclude such treatments but an exclusionary clause exists which excludes coverage for experimental procedures. Citing to her doctor's report, recent district court cases from around the country and supporting materials, Frendreis claims that PSCR is not an experimental treatment and should therefore be covered. BCBSM responds, first, by stating that PSCR is experimental and is therefore explicitly excluded under the policy. Second, BCBSM asserts that it sent "Rider BMT" to Frendreis in October 1992 which explicitly excluded PSCR treatments for breast cancer. This Rider, according to BCBSM, was sent to "clarify" coverage under the policy because BCBSM received an increased number of requests for such treatment.

Policy language will be deemed ambiguous if it is subject to more than one reasonable interpretation. Scottish Guarantee Ins. Co., Ltd., v. Dwyer, 19 F.3d 307 (7th Cir.1994). The policy contains a number of provisions which list services that BCBSM covers and those that it does not. Under the heading "Payable inpatient services" the policy lists: "Transplant services related to: obtaining, testing, and storing tissues and organs for medically recognized transplants such as kidney, cornea, skin and bone marrow" and also "Blood services, including administration, storage and processing of blood

products." (Certificate, p. 32) (emphasis added). The Policy also contains the following provision under the heading "Chemotherapy": "Chemotherapeutic drugs and services required for the treatment of malignant diseases are payable." (Certificate, p. 54). These provisions appear pages apart from the provision which states that "experimental and/or investigational drugs and services" are not payable. (Certificate, p. 56).

Is it a reasonable interpretation of these clauses to believe that the high dose chemotherapy treatment which includes the harvesting of peripheral stem cells is included as a payable procedure? One reasonable interpretation of the clauses is that all types of chemotherapy are covered under the policy. Currently there are hundreds of combinations of drugs which can be used to treat various cancers, all of which would be entitled chemotherapy. This procedure requires a type of bone marrow transplant in order to be effective. In fact, the bone marrow transplant is actually part and parcel of the treatment for without it the patient would most likely not survive the toxic level of drugs. The policy, of course, also covers bone marrow transplants. A reasonable mind could infer that the combination of chemotherapy that includes a bone marrow transplant would therefore be covered.

■ Judges need not check their common sense at the door when interpreting insurance policies and the plain language within them. Relevant terms and provisions are not to be construed in a vacuum, and terms must be read in conjunction with the insured's reasonable expectations, the public policy behind the provisions, and the intended coverage of those provisions. *Ness v. Ford Motor Co.*, 835 F.Supp. 453 (N.D.Ill. 1993). As the Seventh Circuit has stated, insurance policies are contractual agreements and so in divining their terms, the starting point is the intent of the parties. *Wood v. Allstate Ins. Co.*, 21 F.3d 741 (7th Cir.1994).

Certainly, a woman who is currently being treated for cancer when she receives her policy, has informed the insurer of that treatment, and receives a policy which covers various cancer treatments can not be expected to interpret the language of her policy which reads: "Chemotherapeutic drugs and services required for the treatment of malignant diseases are payable" as limiting her coverage.

■ Is the policy ambiguous as to whether PSCR is excluded from coverage? We think it is. The burden of showing that a claim falls within an exclusion rests with the insurer. *Economy Fire & Cas. Co. v. Kubik*, 142 Ill.App.3d 906, 97 Ill.Dec. 68, 71, 492 N.E.2d 504, 507 (1986). The reasons for placing this burden on the insurer are two-fold: first, "the insured's intent in purchasing an insurance policy is to obtain coverage; therefore any ambiguity jeopardizing such coverage should be construed consistent with the insured's intent," and second, "the insurer is the drafter of the policy and could have drafted the ambiguous provision to be clear and specific." *Id.*

■ Further, when there is ambiguity in the policy, those provisions which tend to limit or defeat liability should be construed most favorably to the "insured." *Economy Fire & Cas. Co. v. Bassett*, 170 Ill.App.3d 765, 121 Ill.Dec. 481, 525 N.E.2d 539 (1988).[2] This is especially true of exclusionary clauses. "When an exclusionary clause in an insurance policy is relied upon to deny coverage, its applicability must be clear and free from doubt." *Transamerica Ins.*, 975 F.2d at 327.

■ Because it is possible that the various clauses within the policy suggest that various forms of chemotherapy treatments are covered as well as procedures involving bone marrow transplants, the Court finds that the policy is ambiguous as to whether this procedure, which involves high dose chemotherapy

**2.** The parties failed to address whether there is a dispute as to which state's law applies here. Two options appear to be present from a reading of the policy and accompanying papers: Illinois and Michigan. Although the Court could engage in a lengthy discussion regarding which state's law applies, the Court's review of both states' laws reveals that Michigan law parallels that of Illinois in this area of insurance contract construction. *See, e.g., Guaranty Nat. Ins. Co. v. International Ins. Co.*, 994 F.2d 1280 (7th Cir. 1993) (Seventh Circuit held that courts must strictly construe exclusion clauses in favor of insureds under Michigan law).

and a type of bone marrow transplant, is excluded under the Certificate. BCBSM asserts that even if the Certificate does not explicitly exclude this treatment, any ambiguity was cleared up by the issuance of the rider which specifically excluded PSCR for breast cancer treatment.

■ The function of the court in construing an insurance policy is to ascertain and enforce the intent of the parties as expressed in the agreement. *Blackhawk Hotel Associates v. Kaufman,* 85 Ill.2d 59, 51 Ill.Dec. 658, 421 N.E.2d 166 (1981). The parties' intent to the insurance contract must be determined with reference to the contract as a whole, not by reference to particular words or isolated phrases, but by viewing each part in light of the others. *United Equitable Ins. v. Reinsurance Co. of America,* 157 Ill.App.3d 724, 109 Ill.Dec. 846, 510 N.E.2d 914 (1987). Therefore, the Court must look to the riders which BCBSM sent to Frendreis subsequent to the issuance of the certificate.

■ In October of 1992, BCBSM sent three riders to Frendreis in an effort to "clarify" the terms of the Certificate. These Riders are labeled: "Rider GLE–1 General Limitations and Exclusions;" "Rider BMT BONE MARROW TRANSPLANT;" and "Rider RAPS REIMBURSEMENT ARRANGEMENT FOR PROFESSIONAL SERVICES." The three riders total fourteen pages in length. BCBSM asserts that Rider BMT explicitly excluded coverage for the PSCR treatments. Upon closer examination of Rider BMT, however, the Court finds that another ambiguity exists. The Rider states that "Autologous bone marrow transplants and/or peripheral stem cell transplants are used to rescue a patient after receiving high doses of chemotherapy for cancerous conditions. We pay for these procedures only when they are performed to treat the following conditions." Six conditions are then listed; breast cancer is not one of them. However, the following section then reads: "Exclusions—We will not pay for: ....* autologous or allogeneic bone marrow transplant for conditions other than those listed in this rider." This clause, of course, explicitly limits the policy to ABMT treatments for the previous six conditions.

This clause, however, does not refer to PSCR treatments. The following clause reads: "purging or positive stem cell selection of the bone marrow or peripheral stem cell selection." The plain language states that PSCR is excluded. In this section the exclusion does not limit PSCR to the six conditions listed in the previous section. However, it is obvious that the previous section provides PSCR for those six conditions. The two clauses contradict each other and when taken with the clause which limits ABMT, the reader is left questioning: is this a procedure which is covered and is this a condition which is covered? When examined with the whole insurance policy, it becomes even more ambiguous. The patient is covered for her malignant disease treatment, she is covered for chemotherapy and related services for that disease, she is covered for blood services, she may even be covered for a bone marrow transplant, but she is not certain whether her exact procedure is excluded for breast cancer.

■ Herein lies the crux of the dilemma. If an insurer wants to limit coverage by way of an exclusionary clause, that exclusionary language must be direct and specific. *See Allstate Ins. Co. v. Fibus,* 855 F.2d 660 (9th Cir.1988). This is especially true if the main policy is not explicit in its exclusions, and then the insurer seeks to modify or alter coverage by "clarifying" that language in a document which essentially takes away coverage. *See Transamerica Ins. Co.,* 975 F.2d 321. Would a reasonable reader be aware that PSCR is not covered for breast cancer patients after reading this Rider? Of course not. The terms PSCR and breast cancer do not even occur on the same page, let alone on the same line. And so an insurer might ask: What more must it do to be explicit? How about "Peripheral Stem Cell recovery treatments are not payable for breast cancer patients.?" That is precisely the type of language which could eradicate the ambiguity here. The Court is not so presumptuous that it instructs insurers how to write policies and it is very much aware of the restrictions which prevent it from rewriting policies. *Id.* This awareness, however, does not mandate that we ignore the ambiguity presented in

this policy. Because numerous provisions fail to coincide with other provisions within the policy, because the Rider creates further ambiguity, and because exclusions must be clearly and explicitly set forth, this Court finds that the policy is ambiguous.

Some courts which have addressed the issue of riders and the manner in which they may alter or modify policies have suggested that adequate notice is necessary for the rider to be effective. *See, e.g., 20th Century Ins. Co. v. Liberty Mut. Ins. Co.*, 965 F.2d 747 (9th Cir.1992) (Insurer failed to show insured that endorsement which reduced policy limits was correction of a mistake); *St. Paul Fire and Marine Ins. Co. v. Federal Deposit Ins. Corp.*, 968 F.2d 695 (8th Cir. 1992) (Letter which accompanied amendments to policy and clearly explained the significance of the changes found to be sufficient notice of alterations). Although notice has not been the focus of the dispute in this case, the Court questions whether the mailing of fourteen pages of material which includes an array of topics can possibly place an insured on notice that her coverage has been limited in an immediate and direct way. We must not forget here that Frendreis was undergoing treatment for her breast cancer long before any riders or policies were issued in this dispute. With that further knowledge on the part of the insurer, one might ask, is notice adequate here? One court has suggested that the insured should highlight the areas of change which affect their insureds or at least point out the significance of the change. *Tower Ins. Co. v. Judge*, 840 F.Supp. 679 (D.Minn.1993) (Insurer has a duty to point out the reduction in coverage to the insured and should not be able to take advantage of hidden gaps in coverage created by amendments to policy). Also, a number of courts have found that an alteration without corresponding consideration would be ineffective. *See*, 52 A.L.R.2d 826 (1994) and accompanying cases.

Regardless of the notice and consideration issues that lurk in the background of this matter, the finding of· this Court that the policy and riders are ambiguous takes precedence over those issues. Finally, the question arises as to whether the proposed high dose chemotherapy treatments are experimental. Recently, the Illinois Appellate Court addressed the issue of whether HBMT treatments were experimental in nature and held that the trial court did not err in finding that they were covered under a policy which excluded experimental treatments. *Lubeznik v. HealthChicago*, — Ill.App.3d —, —, 206 Ill.Dec. 9, 12, 644 N.E.2d 777, 780 (1994). The court did not, however, address the issue directly and actually find that such treatments are not experimental.

In two recent decisions by the Seventh Circuit, the court addressed the troubling nature of cases such as this. *Fuja v. Benefit Trust Life Ins. Co.*, 18 F.3d 1405 (7th Cir. 1994); *Bechtold v. Physicians Health Plan*, 19 F.3d 322 (7th Cir.1994). In both cases, the court cautioned courts to be wary of allowing sympathies and desires to vitiate clear principles of contract law. *Fuja*, 18 F.3d 1405, 1409. The Seventh Circuit stated:

> In order to solve the question of whether health insurance providers should cover treatments like HDC/ABMT, the prudent course of action might be to establish some sort of regional cooperative committees comprised of oncologists, internists, surgeons, experts in medical ethics, medical school administrators, economists, representatives of the insurance industry, patient advocates and politicians. Through such a collective task force perhaps some consensus might be reached concerning the definition of experimental procedures, as well as agreement on the procedures, which are so cost prohibitive that requiring insurers to cover them might result in collapse of the healthcare industry.

*Fuja*, 18 F.3d at 1412.

 Recognizing the difficulty of the decisions before it, the Seventh Circuit returned to contract law and interpreted the policy before it. In keeping with the Seventh Circuit's approach to this difficult task, this Court also will view the policy under the applicable contract terms. It is the finding of this court, that unlike the policies in *Bechtold* and *Fuja*, the clauses within the BCBSM policy are so inherently contradictory that the policy is ambiguous. We also note an important distinction between the *Fuja* and *Bechtold* policies and the policy in

this case—those policies were ERISA group policies. The Frendreis policy is a nongroup policy. The distinction has significance. BCBSM assessed Frendreis' condition, which was openly disclosed and apparent to it when it issued her policy, and on a non-group basis, BCBSM then issued a policy which is unclear on the coverage supplied for the most obvious need of the insured—her cancer. Given that chemotherapy is covered, related services to chemotherapy are covered, services for her malignant condition are covered, blood services are covered and bone marrow transplants and peripheral stem cell recovery treatments are often covered, it is reasonable that Frendreis interpreted the ambiguity as supplying her coverage. Taken that ambiguity and the fact that BCBSM failed to clearly and accurately explain any applicable exclusions that would directly and immediately impact upon her coverage, in fact, limit her coverage, this Court construes the ambiguity as supplying coverage to the insured.

### *CONCLUSION*

Defendant's Motion for Judgment on the Pleadings is denied. Plaintiff's Motion for Judgment on the Pleadings is granted. The Frendreis/BCBSM policy is ambiguous and this Court therefore construes that ambiguity in favor of the insured and orders Defendant to supply coverage for the proposed PSCR treatments.