EARL L. VUAGNIAUX *et al.*, Plaintiffs-Appellants, v. RALPH KORTE *et al.*, d/b/a The Edwardsville Partnership, *et al.*, Defendants-Appellees.

Fifth District    No. 5—92—0860

Opinion filed June 30, 1995.

Harry J. Sterling, of Harry J. Sterling, P.C., of Fairview Heights, for appellants.

Gordon R. Broom and Daniel W. Farroll, both of Burroughs, Hepler, Broom, MacDonald & Hebrank, and Debra J. Meadows, of Reed, Armstrong, Gorman, Coffey, Thomson, Gilbert & Mudge, P.C., both of Edwardsville, for appellees.

JUSTICE McLAUGHLIN delivered the opinion of the court:

Plaintiffs, Earl L. Vuagniaux and Alice G. Vuagniaux, appeal from the dismissal of their fourth amended complaint against defendants, Ralph Korte and Garrett A. Balke, d/b/a the Edwardsville Partnership (Korte-Balke), and the City of Edwardsville (the City). We affirm.

Plaintiffs' fourth amended complaint was framed in two counts. Count I was against Korte-Balke. It alleged the breach of a written contract for the sale of real estate. Count I alleged that defendants were engaged in a joint venture to develop a tax-increment-financing district in downtown Edwardsville; that plaintiffs entered into a writ-

ten contract with Korte-Balke, on behalf of the joint venture, for the sale of plaintiffs' downtown real estate; and that Korte-Balke failed to perform its contractual obligations, causing plaintiffs to suffer damages.

Count II was against the City. It alleged the City's breach of the same written contract by virtue of being engaged in a joint venture with Korte-Balke.

Defendants filed motions to dismiss the complaint pursuant to section 2—619 of the Code of Civil Procedure (Code) (735 ILCS 5/2—619 (West 1992)), alleging, *inter alia*, that the City was not a party to the contract; that there was no joint venture between Korte-Balke and the City; that the contract included an express condition precedent which had not been fulfilled and therefore Korte-Balke was not required to perform; and that the Statute of Frauds (Ill. Rev. Stat. 1987, ch. 59, par. 2 (now 740 ILCS 80/2 (West 1992))) barred enforcement of the contract against the City.

The trial court granted the defendants' motions to dismiss pursuant to section 2—619, without describing its reasons.

Section 2—619(a)(7) of the Code allows the dismissal of a complaint when "the claim asserted is unenforceable under the provisions of the Statute of Frauds." (735 ILCS 5/2—619(a)(7) (West 1992).) Section 2—619(a)(9) allows dismissal when "the claim asserted against defendant is barred by other affirmative matter avoiding the legal effect of or defeating the claim." (735 ILCS 5/2—619(a)(9) (West 1992).) In ruling on a section 2—619 motion to dismiss, the trial court may consider pleadings, depositions, and affidavits. (See 735 ILCS 5/2—619(a), (c) (West 1992); 134 Ill. 2d R. 191(a); *Torcasso v. Standard Outdoor Sales, Inc.* (1993), 157 Ill. 2d 484, 486, 626 N.E.2d 225, 226.) Our standard of review is "whether the existence of a genuine issue of material fact should have precluded the dismissal or, absent such an issue of fact, whether dismissal is proper as a matter of law." *Kedzie & 103rd Currency Exchange, Inc. v. Hodge* (1993), 156 Ill. 2d 112, 116-17, 619 N.E.2d 732, 736.

We hold that Korte-Balke's contractual duty to perform was discharged by the nonoccurrence of a condition precedent, and as a result Korte-Balke is not liable for breach of this contract. The circuit court therefore properly dismissed count I of plaintiffs' fourth amended complaint, against Korte-Balke, pursuant to section 2—619(a)(9). Even if there was a joint venture between Korte-Balke and the City, nevertheless, the Statute of Frauds prevents enforcement of this contract against the City. The circuit court therefore properly dismissed count II of plaintiffs' fourth amended complaint, against the City, pursuant to section 2—619(a)(7).

Here are the essential facts. The written contract, entitled "EARNEST MONEY RECEIPT AND SALES CONTRACT," is attached to plaintiffs' fourth amended complaint. Significantly, it describes plaintiffs as the "sellers" and Korte-Balke as the "buyers" of lot 220 in the City of Edwardsville. The contract includes the following additional language relevant to this case:

"[T]he parties hereto agree as follows:

1. [T]his sale is on the following express conditions:

First, that fee simple title to Lot 55 *** be conveyed by Warranty Deed to the Sellers or their nominees;

Second, that the City grant a variance to ordinances, if any, relative to parking and set back lines for a new building on Lot 55;

Third, that the City vacate Second Street, that fee simple title to the West half of vacated Second Street pass to the Sellers or their nominee, and that there will be permanent vehicular access to the West half of vacated Second Street where it adjoins Lot 55 as well as the alleyway South of Lot 55; and

Fourth: that the foregoing three conditions be fully met *before closing* ***." (Emphasis in original.)

At all times relevant herein, the City owned lot 55, the parcel referred to in the first express condition. Lot 55 was never conveyed to plaintiffs.

Plaintiffs' complaint alleges in count I that Korte-Balke breached the contract "in that Korte/Balke was unable to deliver fee simple title to Lot 55 and the west one-half of Second [S]treet as well as the City variances to its parking and setback ordinances." The complaint alleges in count II that "the City by its joint venturer failed to do the things they had promised to do under the [contract] and failed to perform their functions as set forth in said contract."

It is well established that "[t]he intention of the parties to [a] contract must be determined from the instrument itself, and construction of the instrument where no ambiguity exists is a matter of law." *Farm Credit Bank v. Whitlock* (1991), 144 Ill. 2d 440, 447, 581 N.E.2d 664, 667.

It appears from the language of this contract, and from other portions of the record, that plaintiffs desired to sell lot 220 to Korte-Balke only if they obtained title to lot 55. The written contract provides that plaintiffs' obtaining fee simple title to lot 55 was an express condition to the performance of Korte-Balke's contractual *obligation, i.e.*, to pay the agreed-upon price for lot 220. As quoted above, there were other express conditions. The last of these conditions provided that they had to be fulfilled by the closing of the real

estate transaction and the conveyance of title. Plaintiffs argue that these conditions were conditions subsequent, while defendants argue that they were conditions precedent.

■ A condition precedent is to be performed before the contractual obligation becomes binding on the parties, while a condition subsequent is one which divests preexisting contractual liability on the failure to fulfill the condition. (*Wysocki v. Bedrosian* (1984), 124 Ill. App. 3d 158, 163, 463 N.E.2d 1339, 1344; see generally *Blackhawk Hotel Associates v. Kaufman* (1981), 85 Ill. 2d 59, 421 N.E.2d 166; 3A A. Corbin on Contracts § 739 *et seq.* (1960).) "A 'condition precedent' is defined as an event which must occur or an act which must be performed by one party to an existing contract before the other party is obligated to perform. [Citations.] The obligations of the parties end in the event that a condition precedent is not satisfied." (*Maywood Proviso State Bank v. York State Bank & Trust Co.* (1993), 252 Ill. App. 3d 164, 168, 625 N.E.2d 83, 87.) A condition subsequent, on the other hand, is an event which, if it occurs, discharges preexisting contractual liability. See, *e.g.*, *Ahlers v. Sears, Roebuck Co.* (1978), 73 Ill. 2d 259, 383 N.E.2d 207 (monthly payments under settlement contract; payments would be discontinued upon occurrence of condition subsequent); see also *Evans v. Brown* (1994), 267 Ill. App. 3d 662, 642 N.E.2d 1335 (easement granted, subject to condition subsequent and reverter in case of nonuse or use inconsistent with highway).

Having described generally conditions precedent and subsequent, we turn our attention to the contract at issue in this case. Specifically, we will focus on the first condition, the conveyance of lot 55 to plaintiffs; the second and third conditions are subsidiary to the first and need not be discussed separately.

The contract clearly and unambiguously provides for the sale of lot 220 by plaintiffs to Korte-Balke. The plaintiffs were to convey lot 220, and Korte-Balke was to pay the agreed sum. This was to occur at the closing. However, as noted, the conditions required that a transfer of lot 55 from the City to plaintiffs occur prior to closing, and the contract conditioned performance on that occurrence.

■ We conclude that the contract herein unambiguously provides that the conveyance of lot 55 to plaintiffs was a condition precedent, *i.e.*, an event which had to occur before the parties were required to perform their contractual obligations. The occurrence of this condition precedent was in the control of the City, as the owner of lot 55, and the plaintiffs, as the contemplated transferees. Given that the City and the plaintiffs did not complete the conveyance of lot 55, the condition precedent did not occur and Korte-Balke's contractual obligation to purchase lot 220 from plaintiffs was discharged. See

*Maywood Proviso State Bank,* 252 Ill. App. 3d at 166, 625 N.E.2d at 87 (where condition precedent, obtaining FDIC approval, did not occur, summary judgment for defendants proper); *Asher v. Farb Systems, Inc.* (1993), 256 Ill. App. 3d 792, 630 N.E.2d 443 (complaint alleging breach of contract properly dismissed under section 2—619 where condition precedent did not occur); see generally 3A A. Corbin on Contracts § 628, at 16 (1960).

We turn now to plaintiffs' allegations against the City. Although the City is mentioned in the contract, the City did not sign the contract and the City is not described in the contract as a party. Instead, the City is referred to in the third person. It is apparent that this contract was between only two parties, the Vuagniauxes and Korte-Balke. There is no language from which we can conclude that the Vuagniauxes and Korte-Balke contemplated that the City be a party to their agreement. Indeed, count II of plaintiffs' complaint states: "[O]n June 18, 1988, the Vuagniauxs entered into a certain 'Earnest Money Receipt and Sale Contract' *with Korte/Balke* for the sale of the Vuagniauxs' aforesaid real estate ***." (Emphasis added.) When plaintiffs filed their affidavit in opposition to the City's amended motion to dismiss, plaintiffs recognized again that their contract was with Korte-Balke.

We therefore conclude that the City was not a party to this contract.

In an attempt to avoid this construction, plaintiffs alleged in their complaint, and argue on appeal, that the City was engaged in a joint venture with Korte-Balke and that Korte-Balke entered into the contract on behalf of the joint venture. Plaintiffs note that a joint venturer is liable to third parties for the acts of its fellow joint venturers, like partners (see *In re Johnson* (1989), 133 Ill. 2d 516, 526, 552 N.E.2d 703, 707-08). Plaintiffs take the position that the City, as a joint venturer, became a party to the contract. The argument continues that as joint venturers, both Korte-Balke and the City are liable for the failure to perform. Defendants respond that there was no joint venture and that, in any event, the Statute of Frauds bars this contract construction proposed by plaintiffs. On this latter point, we agree with defendants.

On the former point, regarding the existence of a joint venture, we note the following. Plaintiffs filed an affidavit in response to defendants' section 2—619 motion to dismiss, and the City filed a counteraffidavit. These affidavits raised many factual matters. We believe that the affidavits create a sufficient question of fact regarding the existence of a joint venture to preclude the entry of a judgment in the City's favor on that basis. See *Reese v. Malahn* (1973), 53

Ill. 2d 508, 513, 292 N.E.2d 375, 379 (joint venture may be established without a specific formal agreement); *O'Connell v. Pharmaco* (1987), 164 Ill. App. 3d 68, 72, 517 N.E.2d 688, 691 (existence of joint venture is ordinarily question of fact).

However, even if this court assumes for purposes of argument that there was a joint venture between the City and Korte-Balke, we still could not say that in this contract the conveyance of lot 55 to plaintiffs was agreed to in writing by the City. (We have previously ruled that the contract never came to fruition between plaintiffs and Korte-Balke.) This is so because Korte-Balke had no authority to promise to convey the City's separately owned real estate. A contract for the sale of real estate must be in writing to be enforceable, and where such a contract is signed by an agent, the agent's authority to do so must also be in writing. (740 ILCS 80/2 (West 1992); *Bachewicz v. American National Bank & Trust Co.* (1986), 111 Ill. 2d 444, 448, 490 N.E.2d 680, 682.) Even if there was a joint venture, there is no evidence in the record that the City gave Korte-Balke written authority to convey lot 55.

We also note that, consistent with the policy represented by the Statute of Frauds requiring a contract for the sale of real estate to be in writing, the legislature has provided that, ordinarily, a municipality's power to sell real estate may be exercised only by ordinance (65 ILCS 5/11—76—1 (West 1992)); a municipality's power to purchase real estate may be exercised only by ordinance (65 ILCS 5/11—76.1—1 (West 1992)); and official action by the city council is required to bind a city to any contract (see 65 ILCS 5/3—11—17 (West 1992)("to create any liability")).

It is undisputed that the City had not passed an ordinance agreeing to convey lot 55 to plaintiffs, and the City had not passed an ordinance to allow Korte-Balke to enter into a contract binding the City to purchase plaintiffs' real estate.

In sum, not only is there no writing purported to have been executed by the City, but there is no signed writing giving Korte-Balke the authority to enter into this contract on behalf of the City, and there was no ordinance enacted giving Korte-Balke that authority.

Plaintiffs further argue that the contract was ratified by the City and therefore the Statute of Frauds does not apply. We disagree. The record indicates otherwise.

On July 28, 1988, after the contract herein was signed, Korte-Balke wrote the City a letter requesting that the City convey lot 55 *to Korte-Balke*, so that Korte-Balke could convey the lot to plaintiffs and plaintiffs could be relocated. Instead, the minutes of the August 16, 1988, city council meeting indicate that the City directed

corporate counsel to proceed with eminent domain proceedings against plaintiffs' real estate. An ordinance was passed that same day directing the tax-increment-financing district to "acquire and take title" to plaintiffs' real estate. This does not reflect the City's ratification of Korte-Balke's contract, let alone a ratification of Korte-Balke's authority to convey lot 55 to plaintiffs. See *Cosmopolitan National Bank v. Kobialka* (1980), 85 Ill. App. 3d 1, 406 N.E.2d 150 (real estate contract: agent's authority must be in writing; it was not; there was no ratification).

We adhere to our ruling that the City was not a party to this contract and that Korte-Balke did not agree on behalf of the joint venture to convey lot 55 to plaintiffs.

Plaintiffs further argue that part performance on plaintiffs' part took the contract out of the Statute of Frauds and that defendants should be estopped from using the Statute of Frauds as a defense. Both of these theories are equitable in nature. *Leekha v. Wentcher* (1991), 224 Ill. App. 3d 342, 349, 586 N.E.2d 557, 562 (part performance); *M.J. Oldenstedt Plumbing Co. v. K mart Corp.* (1994), 257 Ill. App. 3d 759, 762, 629 N.E.2d 214, 218 (estoppel).

■ However, neither of these theories is applicable to this case, which involves an unambiguous written contract. The foremost reasons are: (1) plaintiffs are presumed to know that the authority of the City's purported agent (Korte-Balke) to sell the City's lot 55 was required to be in writing, and therefore plaintiffs are not entitled to equitable relief (see *Kobialka*, 85 Ill. App. 3d at 5, 406 N.E.2d at 153); (2) the doctrine of part performance is not applicable in actions at law for monetary damages, such as this case (*First National Bank v. McBride Chevrolet, Inc.* (1994), 267 Ill. App. 3d 367, 642 N.E.2d 138; *Sjogren v. Maybrooks, Inc.* (1991), 214 Ill. App. 3d 888, 573 N.E.2d 1367); and (3) any evidence of prior or contemporaneous agreements is not admissible to alter the terms of an otherwise unambiguous written contract (the parol evidence rule) (*Walter v. Sohio Petroleum Co.* (1948), 402 Ill. 33, 44, 83 N.E.2d 346, 351; *Hartbarger v. SCA Services, Inc.* (1990), 200 Ill. App. 3d 1000, 1009, 558 N.E.2d 596, 601; see generally *Roth v. Meeker* (1979), 72 Ill. App. 3d 66, 74, 389 N.E.2d 1248, 1255-56 (discussion of rule).

We further note that none of the cases cited by plaintiffs would support the application of either the part performance doctrine or the equitable estoppel doctrine to hold a party liable on an otherwise unambiguous written contract to which that party was not a signatory.

In conclusion, we hold that the written contract sued upon involved only two parties, plaintiffs and Korte-Balke, and therefore

the City cannot be liable for breach of this contract. We further hold that the contract unambiguously provides that the conveyance of lot 55 to plaintiffs was a condition precedent to the performance of contractual obligations, and because of the nonoccurrence of that condition precedent, Korte-Balke was not obligated to carry out the purchase of plaintiffs' property and thus there was no breach of contract by Korte-Balke.

In light of the foregoing, the judgment of the circuit court of Madison County is affirmed.

Affirmed.

LEWIS and SCHWARTZ, JJ., concur.