Quinzola GRAVES, on behalf of herself
and all others similarly situated,
Plaintiff,

v.

TRU–LINK FENCE COMPANY, an Illinois corporation; Allen R. Perl, Attorney At Law, P.C., an Illinois corporation, and Allen R. Perl, Defendants.

No. 95 C 1748.

United States District Court,
N.D. Illinois,
Eastern Division.

Nov. 7, 1995.

516

Daniel A. Edelman, Cathleen M. Combs, Tara Leigh Goodwin, James Eric Vander Arend, Michelle Ann Weinberg, O. Randolph Bragg, Rick D. Young, Richard Joseph Doherty, Edelman & Combs, Chicago, IL, for plaintiff.

Mark L. Yeager, Brent R. Austin, McDermott, Will & Emery, Chicago, IL, for Tru Link Fence Co. and Allen R. Perl.

## MEMORANDUM OPINION AND ORDER

GETTLEMAN, District Judge.

Plaintiff Quinzola Graves filed a five count amended complaint on behalf of herself as an individual and as the representative of a putative class. Plaintiff alleges that in connection with a contract to erect a wrought iron fence, defendant Tru–Link Fence Co. ("Tru–Link") engaged in a pattern of conduct in violation of the Truth In Lending Act ("TILA"), 15 U.S.C. § 1601 et seq., Federal Reserve Board Regulation Z ("Regulation Z"), 12 C.F.R. part 226 (Counts I [1] and II [2]), and the Illinois Consumer Fraud Act ("ICFA"), 815 ILCS 505/2 (Count V). Plaintiff also alleges that defendants Allen R. Perl, Attorney at Law, P.C., and Allen R.

---

1. Count I alleges that Tru–Link's Fencing Proposal and Estimate fails to disclose the required TILA information.

2. Count II alleges that Tru–Link's retail installment contract violates TILA by failing to give buyers sufficient notice of their rights.

Perl ("together, the Perl defendants") engaged in a pattern of conduct involving the same contract in violation of the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. § 1667 et seq. (Counts III and IV).

Plaintiff asserts that this court has federal question jurisdiction over Counts I through IV pursuant to 28 U.S.C. § 1331 and supplemental jurisdiction over Count V pursuant to 28 U.S.C. § 1337. Tru–Link has filed a motion to dismiss Counts I, II, and V, pursuant to Fed.R.Civ.P. 12(b)(1) and 12(b)(6). For the reasons set forth below, Tru–Link's motion is denied.

### Facts[3]

On July 21, 1994, plaintiff met with Chuck Lamensop ("Lamensop"), a Tru–Link representative, to discuss a contract between plaintiff and Tru–Link to build a fence surrounding plaintiff's home. Lamensop showed plaintiff pictures of a wrought iron fence with scrolls and spear tops. Based on Lamensop's representations plaintiff signed a document entitled "Fencing Estimate and Proposal" (the "Fencing Proposal"). The Fencing Proposal states that the price for material and labor for the fence is $5000, with a downpayment of $1000 and the remaining $4000 to be paid over a 36 month period at $142.61 per month.

The Fencing Proposal has a diagram showing the fence measurements. Directly below the diagram it states:

THE COMPANY IS OBLIGATED ONLY BY WHAT IS WRITTEN IN THIS CONTRACT NO OTHER CONTRACTS, VERBAL AGREEMENTS OR SPECIFICATIONS ARE VALID UNLESS STATED ABOVE.

·    ·    ·    ·    ·

IN THE EVENT THIS PROPOSAL IS NOT APPROVED BY TRU–LINK FENCE CO ENGINEERING OR CREDIT DEPARTMENT ANY PAYMENT MADE SHALL BE REFUNDED TO THE CUSTOMER AND THIS PROPOSAL SHALL BECOME NULL AND VOID.

·    ·    ·    ·    ·

I, THE UNDERSIGNED HEREBY AGREE THAT IN THE EVENT OF DEFAULT IN THE PAYMENT OF ANY AMOUNT DUE, AND IF THIS ACCOUNT IS PLACED IN THE HANDS OF AN AGENCY OR ATTORNEY FOR COLLECTION OR LEGAL ACTION, TO PAY AN ADDITIONAL CHARGE EQUAL TO THE COST OF COLLECTIONS INCLUDING AGENCY AND ATTORNEY FEES AND COURT COSTS INCURRED AND PERMITTED BY LAWS GOVERNING THESE TRANSACTIONS ...

### AGREEMENT AND ACCEPTANCE TO PAY

TRU–LINK FENCE CO AGREES TO FURNISH MATERIAL FOR AND INSTALL A TRU–LINK FENCE AS DESCRIBED ABOVE AND THE BUYER AUTHORIZES WORK TO COMMENCE AND AGREES TO PAY THE PRICE DESCRIBED ABOVE AS SPECIFIED AT THE TIME OF INSTALLATION.

| Quinzola Graves [signed] | Chuck Lamensop [signed] |
|---|---|
| BUYER | COMPANY REPRESENTATIVE |

---

**3.** The facts are taken from the allegations in the amended complaint. Only those facts that relate to the allegations against Tru–Link are included in this opinion. When considering a motion to dismiss pursuant to Rule 12(b)(6), this court must accept all well-pleaded facts and allegations in the complaint as true, make reasonable inferences therefrom and view the allegations in the light most favorable to the plaintiff. See, e.g., *Albright v. Oliver,* —— U.S. ——, 114 S.Ct. 807, 810, 127 L.Ed.2d 114 (1994); *Badger Pharmacal, Inc. v. Colgate–Palmolive Co.,* 1 F.3d 621, 626 (7th Cir.1993); *Powe v. City of Chicago,* 664 F.2d 639, 642 (7th Cir.1981).

After plaintiff signed the Fencing Proposal she was presented with and signed a retail installment contract ("Installment Contract"), which states the following terms: (1) an annual percentage rate of 17%; (2) finance charges of $992.08; (3) amount financed of $3500; (4) total payments of $4492.08; (5) cost of the purchase on credit, including the down payment, of $5992.08. The Installment Contract also states:

> Your payment schedule will be a first payment of $124.78 and 35 payments of $124.78 beginning on [sic] 30 days from comp[letion].
>
> .    .    .    .    .
>
> *Security:* You are giving a security interest in the goods or property being purchased.
>
> .    .    .    .    .
>
> PROMISE TO PAY You agree to pay us the amount shown as "Total of Payments" in consecutive monthly installments commencing on the first due date as shown above and on the same day of each succeeding month until paid in full.
>
> .    .    .    .    .
>
> If checked the following notice applies BUYER'S RIGHT TO CANCEL: YOU, THE BUYER, MAY CANCEL THIS TRANSACTION AT ANY TIME PRIOR TO MIDNIGHT OF THE THIRD BUSINESS DAY AFTER THE DATE OF THIS TRANSACTION ... [4]

The information on the Fencing Proposal and the Installment Contract were the only credit term disclosures made to plaintiff prior to her signing the Installment Contract. After signing the Installment Contract, Tru–Link altered the Fencing Proposal by changing the amount of the down payment and monthly payments to conform with those stated on the Installment Contract.

Following this meeting, Tru–Link installed a fence while plaintiff was not at home. The fence that was installed was not the same fence that was in the picture Lamensop showed plaintiff on June 21, and was installed in a "shoddy" manner. Because the fence did not conform to the parties' agreement, plaintiff refused to sign a completion certificate for the fence.

On October 12, 1994, Tru–Link signed plaintiff's name on a completion certificate and sold her Installment Contract to American General Finance ("American General"). When American General learned that the signature on the completion certificate was not plaintiff's, it returned the contract to Tru–Link and received the return of funds it had paid to Tru–Link. Shortly thereafter, Tru–Link removed the gate it had installed on plaintiff's property and sent plaintiff, through Perl, a letter demanding payment for the fence.

On March 6, 1995, after receiving a second demand letter threatening a law suit and attaching a draft complaint, plaintiff sent Tru–Link written notice that she was cancelling the fence contract due to Tru–Link's failure to comply with TILA. Tru–Link obtained a security interest in plaintiff's residence in the form of a mechanic's lien based on construction of the fence described in the two Fencing Proposals [5] and the Installment Contract. Plaintiff alleges that Tru–Link has filed liens against other people's homes and has a policy and practice not to check the box on its Installment Contracts that gives buyers notice of a right of rescission.

## DISCUSSION

Before addressing the merits of Tru–Link's motion, the court finds it necessary to admonish counsel for both plaintiff (lawyers with Edelman & Combs) and defendant (lawyers with McDermott, Will & Emery) for unprofessional and highly distasteful tactics. In its opening brief, Tru–Link uses the first page and a half to attack plaintiff's counsel and their professional advocacy, by offering an excerpt from a hearing in the Circuit Court of Cook County that has nothing to do with the instant motion. Rising to the bait plaintiff's lawyers make accusatory comments about Tru–Link's counsel for, among other things, fabricating facts and mis-citing

---

4. There is a box next to this paragraph that is not checked.

5. The original first Fencing Proposal, and the amended Fencing Proposal that was changed after plaintiff had signed the Installment Contract.

statutes. This court is unimpressed, and finds this conduct—particularly by defendant's attorneys—wholly inappropriate. The character of plaintiff's attorneys *may* be relevant to class certification issues; it is not relevant to an inquiry of whether the complaint states a claim for which relief can be granted or whether this court has subject matter jurisdiction. In the future, counsel should spend more time addressing the facts and issues in the case at hand and, if warranted, bring a proper Fed.R.Civ.P. 11 motion in the event they want to attack opposing counsel's practices as those practices relate to the instant case.

■ Addressing the merits of Tru–Link's motion, a complaint should not be dismissed pursuant to Rule 12(b)(6) unless "it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Hartford Fire Insurance Co., et al. v. California et al.,* — U.S. —, —, 113 S.Ct. 2891, 2917, 125 L.Ed.2d 612 (1993); *Conley v. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 101–102, 2 L.Ed.2d 80 (1957). In reviewing a motion to dismiss, the court tests the sufficiency of the complaint, not the merits of the suit. *Triad Associates, Inc. v. Chicago Housing Authority,* 892 F.2d 583, 586 (7th Cir.1989), *cert. denied,* 498 U.S. 845, 111 S.Ct. 129, 112 L.Ed.2d 97 (1990). The court must presume that all well-pleaded facts are true, and resolve all ambiguities and draw all reasonable inferences in favor of the plaintiff. *Dawson v. General Motors Corp.,* 977 F.2d 369, 372 (7th Cir.1992).

## CONSUMMATION OF THE CONTRACT

■ Tru–Link moves to dismiss Count I of the amended complaint, asserting that the Fencing Proposal is not a contract and, therefore, is not subject to TILA or Regulation Z. TILA disclosures are required prior to the consummation of a credit transaction. *Clark v. Troy & Nichols, Inc.,* 864 F.2d 1261, 1263 (5th Cir.1989). Plaintiff asserts that the Fencing Proposal was a contract for a credit transaction, that she was bound at the time she signed the document and, therefore, the

Fencing Proposal is subject to the requisite pre-consummation TILA disclosure laws.

■ Whether the Fencing Proposal formed a binding credit transaction is a question of law to be determined by the court. *Quake Const. Inc. v. American Airlines, Inc.,* 141 Ill.2d 281, 288, 152 Ill.Dec. 308, 565 N.E.2d 990 (1990). Above plaintiff's and Lamensop's signatures is an explicit agreement and acceptance of Tru–Link to furnish materials and install a fence, and plaintiff's authorization to commence work and pay for the fence. "Consummation" of a contract for purposes of TILA and Regulation Z disclosures occurs when the *consumer* becomes contractually bound to a credit transaction. *Clark,* 864 F.2d at 1263; *Diaz v. Westgate Lincoln Mercury,* 1994 LEXIS 16300 *32 (N.D.Ill. November 7, 1994); 12 C.F.R. 226.2(a)(13).[6]

■ In *Clark,* the court quoted the Official Staff Commentary on this definition: "[a] contractual commitment agreement, for example, that under applicable law binds the consumer to the credit terms would be consummation ..." *Id.,* 864 F.2d at 1264 (emphasis added). Under the facts in the instant case, the court finds plaintiff was contractually bound to the price and credit terms stated in the Fencing Proposal when she and Tru–Link's representative signed the document. Therefore, under TILA and *Clark,* the court finds that Tru–Link was obligated to make all required TILA and Regulation Z disclosures prior to the time that plaintiff and Tru–Link's representative signed the Fencing Proposal.

Tru–Link argues that the Fencing Proposal does not create a binding obligation because it expressly states: "In the event this proposal is not approved by Tru–Link Fence Co. engineering or credit department, any payment made shall be refunded to the customer and this proposal shall become null and void." Tru–Link argues that this language means that prior approval is a condition precedent to either party being bound by the terms of the Fencing Proposal.

**6.** 12 C.F.R. § 226.2(a)(13) provides: "Consummation" means the time that a consumer be- comes contractually obligated on a credit transaction.

■ A condition precedent is a condition that must be performed before contractual obligations become binding on both of the parties. *Vuagniaux v. Korte*, 273 Ill.App.3d 305, 309, 210 Ill.Dec. 38, 652 N.E.2d 840 (5th Cir.1995). "A condition precedent is defined as an event which must occur or an act which must be performed by one party to an existing contract before the other party is required to perform." *Id.*, quoting, *Maywood Proviso State Bank v. York State Bank & Trust Co.*, 252 Ill.App.3d 164, 192 Ill.Dec. 123, 625 N.E.2d 83 (1st Dist.1993). A condition subsequent is "an event which, if it occurs, discharges preexisting contractual liability." *Vuagniaux*, 273 Ill.App.3d at 309, 210 Ill.Dec. 38, 652 N.E.2d 840.

■ The court finds that Tru–Link's approval is a condition subsequent to the fence contract, not a condition precedent. Nowhere on the Fencing Proposal does it state that the agreement to build and pay for the fence is "subject to" Tru–Link's prior approval. The plain language of the Fencing Proposal obligates Tru–Link to build plaintiff a fence subject to the ability to dissolve the contract later if the engineering or plaintiff's credit is not approved.

Tru–Link cites *Baxter v. Sparks Oldsmobile, Inc.*, 579 F.2d 863 (4th Cir.1978), to no avail. In *Baxter*, the document at issue stated: "... IN THE EVENT OF A TIME SALE, DEALER SHALL NOT BE OBLIGATED TO SELL UNTIL APPROVAL OF THE TERMS HEREOF IS GIVEN BY A BANK ..." *Id.* 579 F.2d at 864. Under these terms, the court held that the seller was not obligated to make TILA disclosures

at the time the parties signed the document because approval of the buyer's credit was a condition precedent to consummation of the transaction. *Id.* In effect, no contract existed "until" the terms were approved. In the instant case, the effect of the document was to create a contract *unless* the terms were not approved at some indefinite time in the future.

In its brief, Tru–Link emphasizes the fact that the term "proposal" is used in the Fencing Proposal. Undercutting this argument, as noted above, the Fencing Proposal states that, "the company is obligated only by what is written in *this contract* ..." (emphasis added). The court finds that the use of the term "proposal" does not negate the clear language in the Fencing Proposal that creates a binding contractual obligation. Accordingly, having found that the Fencing Proposal constitutes a consummation of a credit transaction, the court denies Tru–Link's motion to dismiss Count I of the amended complaint.

## TILA DISCLOSURES

Tru–Link moves to dismiss Count II of the amended complaint, asserting that Tru–Link's Installment Contract complies in all respects with TILA's disclosure requirements. Plaintiff argues that the Installment Contract fails to disclose "the number, amounts, and timing of payments scheduled to repay the obligation" and plaintiff's right to rescind the transaction, in violation of 15 U.S.C. § 1638(a)(6)[7] and 12 C.F.R. §§ 226.18(g)[8] ("§ 226.18(g)") and 226.23[9] ("§ 226.23").

---

**7.** 15 U.S.C. § 1638(a) provides:
(a) For each consumer credit transaction other than under an open end credit plan, the creditor shall disclose each of the following items to the extent applicable:

    (6) The number, amount, and due dates or period of payments scheduled to repay the total of payments.

**8.** 12 C.F.R. § 226.18(g) provides:
Payment schedule. The number, amounts, and timing of payments scheduled to repay the obligation.
    (1) In a demand obligation with no alternate maturity date, the creditor may comply with this paragraph by disclosing the due dates or

payment periods of any scheduled interest payments for the first year.

    .    .    .    .    .

**9.** 12 C.F.R. § 226.23 provides in part:

    .    .    .    .    .
(a) Consumer's right to rescind.
    (1) In a credit transaction in which a security interest is or will be retained or acquired in a consumer's principal dwelling, each consumer whose ownership interest is or will be subject to the security interest shall have the right to rescind the transaction ...

    .    .    .    .    .

(b) Notice of right to rescind. In a transaction subject to rescission, a creditor shall deliver 2

### Disclosure of Right to Rescind

Tru–Link argues that plaintiff is incorrect in claiming that § 226.18 requires it to disclose a right of rescission arising from the mechanic's lien that Tru–Link allegedly obtained on plaintiff's home. Tru–Link asserts that the only lien established by the contract documents between these parties created a security interest in the fence and gate sold by defendant to plaintiff, an interest that was properly disclosed as required by § 226.18(m). Because the interest in plaintiff's home allegedly arises by operation of law, and interests arising by operation of law are excluded from the disclosures required under § 226.18 by § 226.2(a)(25)[10], Tru–Link concludes that it is not required to provide such notice.

■ Tru–Link is correct in concluding that § 226.18 does not require disclosure of the right of rescission. Unfortunately for Tru–Link, § 226.23 requires such disclosure under the facts alleged. The same § 226.2(a)(25) that excludes security interests arising by operation of law from § 226.18, includes such interests for purposes of the right of rescission under § 226.23. Under the latter regulation, defendant must provide a separate, detailed notice of the right of rescission in credit transactions in which security interests are or will be retained or acquired in a consumer's principal dwelling. The Federal Reserve Board interprets this to include mechanic's liens. 12 C.F.R. 226, Supp. I, § 6(5), at 294.

Plaintiff's amended complaint, although it does not mention § 226.23, satisfies the liberal requirements of notice pleading under Fed.R.Civ.P. 8. Plaintiff alleges that Tru–Link obtained a mechanic's lien on her residence and has filed mechanic's liens on the residences of other customers. The amended complaint also alleges that defendant failed to provide notice of the right of rescission in violation of TILA. Under the regulations and interpretation discussed above, this is sufficient to plead a TILA violation.[11]

■ Tru–Link argues that Count II should be dismissed for failure to specifically allege a violation of § 226.23. As this court held in *Moore v. Fidelity Financial Services, Inc.*, 869 F.Supp. 557, 561 (N.D.Ill.1994), a complaint need not specify the correct statute to defeat a Rule 12(b)(6) motion to dismiss. "It is a well-settled principle of law that a complaint should not be dismissed merely because a plaintiff's allegations do not support the particular legal theory [she] advances, for the court is under a duty to examine the complaint for relief on any possible theory." *Id.*, quoting, *Bowers v. Hardwick*, 478 U.S. 186, 201, 106 S.Ct. 2841, 2849, 92 L.Ed.2d 140 (dissenting opinion, Blackmun, 1986). As this court stated in *Moore,* however, the preferred practice by experienced counsel such as plaintiff's attorneys in the instant case (the same lawyers as in *Moore* ) would be to provide the court and the defendant with sufficiently precise legal authority to avoid needless motion practice. If these lawyers, who know better, continue to file bare-bones complaints alleging violations of unspecified sections of TILA, perhaps the court will one day lose all patience. Today, however, is not the day.

■ Finally, Count II properly alleges a violation of 15 U.S.C. § 1638(a)(6) and 12 C.F.R. § 226.18 for failure to state a beginning date on which monthly payments are to be made. Tru–Link argues that "30 days from comp[letion]" was the best it could do, and that the regulations (12 C.F.R. § 226.17(c)(2)) provide that "if any information necessary for an accurate disclosure is unknown to the creditor, it shall make the

---

copies of the notice of the right to rescind to each consumer entitled to rescind . . .

**10.** Section 226.2(a)(25) provides:

"Security interest" means an interest in property that secures performance of a consumer credit obligation and that is recognized by state or federal law. . . . For purposes of disclosure under §§ 226.6 and 226.18, the term does not include an interest that arises solely by operation of law. However, for purposes of the right of rescission under §§ 226.15 and 226.23, the term does include interests that arise solely by operation of law.

**11.** The court accepts plaintiff's allegations for purposes of this motion. Thus, the court does not reach the question, unaddressed by the parties, whether defendant in fact acquired a mechanic's lien at the time the contract documents were executed, before any default by plaintiff.

disclosure based on the best information reasonably available and shall state that the disclosure is an estimate." Tru–Link's argument defeats itself. To comply with the statute and the regulation, defendant must disclose when payments should begin or, if it cannot do so (as appears to be the case with respect to the installation of fences), it should provide an estimated date of completion and "state that the disclosure is an estimate." *Rowland v. Magna Millikin Bank,* 812 F.Supp. 875 (C.D.Ill.1992). The Installment Contract signed by plaintiff thus does not appear to contain the proper disclosure.

Accordingly, the court finds that plaintiff has sufficiently alleged a TILA violation in Count II of her amended complaint and, denies Tru–Link's motion to dismiss that count.

**ILLINOIS CONSUMER FRAUD ACT**

■ Tru–Link moves to dismiss plaintiff's claim that Tru–Link violated the ICFA for lack of subject matter jurisdiction pursuant to Fed.R.Civ.P. 12(b)(1). Tru–Link asserts that because the court lacks subject matter jurisdiction over plaintiff's state law claims plaintiff fails to state a claim in Counts I and II under TILA. As set forth above, the court finds that plaintiff has sufficiently alleged federal claims in Counts I and II against Tru–Link. In Count V plaintiff alleges that Tru–Link violated the ICFA act by, among other things, failing to provide the disclosures required by TILA prior to plaintiff having signed the Fencing Proposal and the Installment Contract. The court finds that it has supplemental jurisdiction over plaintiff's ICFA claims alleged in Count V pursuant to 28 U.S.C. § 1367 because the subject matter in Counts I, II and V are related claims that form part of the same action. Accordingly, the court denies Tru–Link's motion to dismiss Count V for lack of subject matter jurisdiction.

Tru–Link also moves to dismiss Count V for failure to state a claim under Rule 12(b)(6). Tru–Link argues that plaintiff fails to state a CFCA claim because: (1) the Fencing Proposal is not a binding contract and therefore not subject to TILA; and, (2) the Installment Contract complies with all of TILA's disclosure requirements. As stated above, the court finds that the Fencing Proposal constitutes the consummation of a credit transaction, and that plaintiff has stated a claim for a failure to make the required TILA disclosures prior to plaintiff having signed the Installment Contract. Accordingly, Tru–Link's motion to dismiss Count V for failure to state a claim is denied.

### Conclusion

For the reasons as stated above, the court denies Tru–Link's motion to dismiss Counts I, II, and V of the amended complaint. Tru–Link shall file its answer to those counts on or before November 22, 1995. This case is set for status on November 8, 1995, at 9:15 a.m. The parties are to be prepared to discuss the status of the case at that time, including a schedule for a motion to certify the plaintiff class or classes.