[947 NYS2d 17]

JP MORGAN CHASE & Co. et al., Appellants, v INDIAN HARBOR INSURANCE COMPANY et al., Defendants, and ARCH INSURANCE COMPANY et al., Respondents.

JP MORGAN CHASE & Co. et al., Respondents, v INDIAN HARBOR INSURANCE COMPANY et al., Appellants, et al., Defendants.

First Department, June 12, 2012

**APPEARANCES OF COUNSEL**

*Proskauer Rose LLP*, New York City (*John H. Gross, Steven E. Obus, Seth B. Schafler, Francis D. Landrey, Michelle R. Migdon* and *Lauren J. Rabinowitz* of counsel), for JP Morgan Chase & Co. and others appellants/respondents.

*Troutman Sanders LLP*, New York City (*Matthew J. Aaronson* of counsel), *Troutman Sanders LLP*, Washington, DC (*John R. Gerstein*, of the District of Columbia and Maryland bars, admitted pro hac vice, of counsel), and *Troutman Sanders LLP*, Chicago, Illinois (*David F. Cutter*, of the Illinois, Maryland and District of Columbia bars, admitted pro hac vice, of counsel), for Indian Harbor Insurance Company, appellant.

*Melito & Adolfsen PC*, New York City (*S. Dwight Stephens* of counsel), for Houston Casualty Company, appellant.

*Kaufman Borgeest & Ryan LLP*, Valhalla (*Scott A. Schechter* of counsel), for Travelers Indemnity Company, appellant, and for Arch Insurance Company and another respondents.

*Akin Gump Strauss Hauer & Feld LLP*, New York City (*Mitchell P. Hurley, Elizabeth J. Young* and *Isabelle R. Liberman* of counsel), for Twin City Fire Insurance Company, respondent.

*Lewis Brisbois Bisgaard & Smith, LLP*, New York City (*Stephanie A. Nashban* of counsel), for Lumbermens Mutual Casualty Company, respondent.

*Caughlin Duffy LLP*, New York City (*Robert J. Kelly* of counsel), for Swiss Re International SE, respondent.

**OPINION OF THE COURT**

DeGRASSE, J.

Plaintiff alleges that defendants breached their contractual obligations to provide indemnification under excess insurance policies they issued. Plaintiff's predecessor, Bank One Corporation, purchased $175 million in "claims made" bankers professional liability insurance and securities action claim coverage for the period October 1, 2002 to October 1, 2003. Bank One's insurance program was structured as a tower of follow-the-form coverage in excess of a self-insured retention. Defendant Indian Harbor Insurance Company was the primary carrier while defendants Houston Casualty Company, Arch Insurance Company, St. Paul Mercury Insurance Company, Twin City Fire Insurance Company, Lumbermens Mutual Insurance Company, Swiss Re International SE and nonparties Federal Insurance Company, American Zurich Insurance Company and Gulf Insurance Company provided excess coverage. The carriers and the tiers of coverage they provided are listed in descending order as follows:

| Tier/Insurance Company | Coverage Limits |
|---|---|
| Seventh Excess—Swiss | Re $50 million in excess of $150 million |
| Sixth Excess—Federal | $10 million in excess of $140 million |
| Fifth Excess—Lumbermens, St. Paul and Arch | $30 million in excess of $110 million, with a "quota share" apportionment of $10 million among the three carriers |
| Fourth Excess—Twin City | $15 million in excess of $95 million |
| Third Excess—Zurich | $15 million in excess of $80 million |
| Second Excess—Gulf | $15 million in excess of $65 million |
| First Excess—Houston | $15 million in excess of $50 million |
| Primary—Indian Harbor | 50% of loss up to $50 million subject to a maximum coverage limit of $25 million |

In November 2002, actions were brought against Bank One and some of its affiliates in connection with their roles as indenture trustee and otherwise with regard to certain notes issued by NPF XII, Inc. and NPF VI, Inc. Plaintiff's entities (the JP Morgan entities) were defendants in some of the actions as well as other related actions in which the Bank One entities were not defendants. Between July and November 2004, while the NPF litigation was still pending, the Bank One entities were merged into the JP Morgan entities. Between February 2006 and March 2008, plaintiff settled six actions that were part of the NPF litigation for an aggregate of $718 million. Plaintiff's theory of recovery in this action is that the portion of the settlement attributable to claims made against the heritage Bank One entities, as opposed to claims based on the conduct of the premerger JP Morgan entities, exceeded the combined limits of the policies in the Bank One tower of insurance.

Before bringing this action, plaintiff settled with Federal for the sum of $17 million. That settlement agreement covered Federal's liability under the Bank One program as well as claims under separate policies issued by Federal's affiliate, Executive Risk Indemnity, Inc., under a different insurance program. The agreement provided for no allocation of the settlement as between plaintiff's claims against Federal and those against Executive Risk. As shown above, Swiss Re is the only carrier that was higher than Federal in the Bank One tower.

After commencing this action, plaintiff entered into another $17 million settlement, this time with Zurich and its affiliate, Steadfast Insurance Company. This settlement covered plaintiff's $15 million claim under Zurich's policy in the Bank One tower as well as a $13.4 million claim against Steadfast under separate insurance covering unrelated litigation. After that settlement, plaintiff amended the complaint so as to drop Zurich as a defendant.

Twin City moved for summary judgment, asserting that plaintiff could not establish the occurrence of express conditions precedent to coverage under Twin City's policy. Invoking their own policy provisions, Swiss Re, Lumbermens, St. Paul and Arch also moved for summary judgment on similar grounds. The motion court granted all of the motions for summary judgment on the basis of its construction of the various policies. We affirm.

The parties agree that Illinois law governs the disposition of the motions for summary judgment. Under the law of that state,

the construction of an insurance policy is a question of law that requires a court to ascertain the intent of the parties to the contract (*Outboard Mar. Corp. v Liberty Mut. Ins. Co.*, 154 Ill 2d 90, 108, 607 NE2d 1204, 1212 [1992]). Accordingly, insurance policies are construed like any other contract (*Putzbach v Allstate Ins. Co.*, 143 Ill App 3d 1077, 1082, 494 NE2d 192, 196 [1986]).

The Twin City policy provided "that liability for any loss shall attach to [Twin City] only after the Primary and Underlying Excess Insurers shall have duly admitted liability and shall have paid the full amount of their respective liability." Hence, by the plain language of this attachment provision, the underlying insurers' admission of liability and the payment of the full amount of their liability were conditions precedent to Twin City's liability under its policy. "A condition precedent is defined as an event which must occur or an act which must be performed by one party to an existing contract before the other party is required to perform" (*Vuagniaux v Korte*, 273 Ill App 3d 305, 309, 652 NE2d 840, 842 [1995] [internal quotation marks omitted]).

The first condition was not met because Zurich, the insurer directly beneath Twin City in the Bank One tower, did not admit liability when it settled with plaintiff. In fact, the settlement agreement between Zurich and plaintiff provided that "the negotiation, execution and performance of this Agreement shall not constitute, or be construed as, an admission of liability or infirmity of any defense or claim whatsoever by any Party." Moreover, there is no way to determine that Zurich paid the full amount of its liability under its Bank One tower policy because the settlement provided for no allocation of the $17 million payment between Zurich and Steadfast. Therefore, the second condition set forth in Twin City's attachment provision was not met either. For reasons that follow, conditions precedent to liability under the remaining movants' excess policies also have not been met.

Lumbermens' policy provided that the insurance afforded thereunder "shall apply only after all applicable Underlying Insurance with respect to an Insurance Product has been exhausted by actual payment under such Underlying Insurance." St. Paul's policy provided that "[St. Paul] shall only be liable to make payment under this policy after the total amount of the Underlying Limit of Liability has been paid in legal currency by the insurers of the Underlying Insurance as covered

loss thereunder." Similarly, the insurance coverage afforded by Arch's policy applied "only after exhaustion of the Underlying Limit solely as a result of actual payment under the Underlying Insurance in connection with Claim(s) and after the Insureds shall have paid the full amount of any applicable deductible or self insured retentions" (emphasis omitted). Swiss Re's liability under its policy attached "only when the Underlying Insurer(s) shall have paid or have been held liable to pay, the full amount of the Underlying Limit(s)."

The foregoing attachment provisions are analogous to two attachment provisions that were at issue in *Great Am. Ins. Co. v Bally Total Fitness Holding Corp.* (US Dist Ct, ND Ill, 06 Civ 4554, Andersen, J., 2010). Under one such provision in *Great Am.*, excess coverage became applicable "only after all Underlying Insurance has been exhausted by payment of the total underlying limit of insurance" (*id.* at 1). Pursuant to the other excess policy before the *Great Am.* court, liability for covered losses attached "only after the insurers of the Underlying Policies shall have paid, in the applicable legal currency, the full amount of the Underlying Limit and the Insureds shall have paid the full amount of the uninsured retention, if any, applicable to the primary Underlying Policy" (*id.*). We are persuaded by *Great Am.*'s holding that the excess policies before the court unambiguously required the insured to collect the full limits of the underlying policies before resorting to excess insurance (*id.* at 5).

We are also persuaded by the Fifth Circuit's reasoning in *Citigroup Inc. v Fed. Ins. Co.* (649 F3d 367 [2011]) in which it was held that under Texas law "settlement for less than the underlying insurer's limits of liability does not exhaust the underlying policy" (*id.* at 373). In this case, summary judgment was properly granted because the aforementioned combination of plaintiff's settlements with Zurich and Steadfast preclude any determination of whether Zurich's policy limits were reached as required by the policies issued by Twin City, Lumbermens, St. Paul, Arch and Swiss Re. Plaintiff's preaction settlement with Federal and Executive Risk had the same effect on Swiss Re's liability because there was no allocation of the settlement between the two underlying carriers.

■ Plaintiff seeks refuge in language in a maintenance provision of Twin City's policy which provided that the insured's failure to maintain all of the underlying policies in full effect would not invalidate the policy. "If the words in the policy are

unambiguous, a court must afford them their *plain, ordinary and popular meaning*" (*Outboard Mar. Corp.*, 154 Ill 2d at 108, 607 NE2d at 1212). Guided by *Outboard Mar. Corp.*, we reject plaintiff's argument that its settlement with Zurich can be construed as a failure to maintain the underlying policies within the contemplation of the maintenance provision. In addition, Twin City does not challenge the validity of its policy. It simply maintains that conditions precedent to coverage were not met. As stated above, its premise is that conditions precedent to its liability have not been met. Therefore, the maintenance provision is irrelevant to Twin City's motion.

Plaintiff also relies on *Zeig v Massachusetts Bonding & Ins. Co.* (23 F2d 665 [2d Cir 1928]). In *Zeig*, an insured who settled with his primary carriers for less than their policy limits, sued his excess carrier, seeking indemnification for the amount of his loss exceeding the underlying policy limits (*id.* at 665). The policy in *Zeig* provided that the excess insurance thereunder "shall apply and cover only after all other insurance herein referred to shall have been exhausted in the payment of claims to the full amount of the expressed limits of such other insurance" (*id.*). The Second Circuit found this provision ambiguous, reasoning that "payment" as used therein could refer to "the satisfaction of a claim by compromise, or in other ways" in addition to "payment in cash" (*id.* at 666). The *Zeig* court, nevertheless, recognized that parties are free to impose any condition precedent to liability upon a policy as they choose (*id.*). Here, Twin City's attachment provision stands apart from the one before the court in *Zeig* because of its exacting requirement that the underlying carriers shall have admitted and paid the full amounts of their respective liabilities. For reasons already stated, the attachment provisions of the other policies before this Court are also distinguishable from the one before the *Zeig* court. Like the court in *Great Am. Ins. Co. v Bally Total Fitness Holding Corp.* (US Dist Ct, ND Ill, 06 Civ 4554, Andersen, J., 2010, *supra*), we find no ambiguity in any of the policies that would make *Zeig* controlling (*id.* at 5). We further note that the United States District Court for the Northern District of Illinois, interpreting Illinois law, found *Zeig* to be contrary to Seventh Circuit precedent insofar as it stands for the proposition that " 'exhaustion' of the primary policies' payments does not require collection of the primary policies as a condition precedent to the right to recover excess insurance" (*see Premcor USA, Inc. v American Home Assur. Co.*, 2004 WL 1152847, *8,

2004 US Dist LEXIS 9275, *22 [ND Ill 2004], *affd* 400 F3d 523 [7th Cir 2005]). Plaintiff's reliance on *Hasemann v White* (177 Ill 2d 414, 686 NE2d 571 [1997]) is misplaced because that case involved the interpretation of a statutory provision as opposed to an insurance policy.

By its own terms, the attachment provision of Swiss Re's policy was subject to condition 3 of the policy, which provided that

> "[i]n the event of erosion or exhaustion of the aggregate limit of liability on the Underlying Insurer(s) policy by reason of loss(es), this Policy shall
>
> "(a) if erosion be partial, pay the excess of the reduced Underlying Limit(s) of the Policy(ies) of the Underlying Insurer(s), or
>
> "(b) if exhaustion be complete, continue in force in place of such Policy(ies) of the Underlying Insurer(s)."

In *Qualcomm, Inc. v Certain Underwriters at Lloyd's, London* (161 Cal App 4th 184, 73 Cal Rptr 3d 770 [2008]) the court distinguished *Zeig* and held that a "paid or have been held liable to pay" provision required primary insurance to be exhausted or depleted by actual payment of losses by the underlying insurer (*id.* at 195, 198-200). Like the *Qualcomm* court, we reject the notion that

> "when an insured settles with its primary insurer for an amount below the primary policy limits but absorbs the resulting gap between the settlement amount and the primary policy limit, primary coverage should be deemed exhausted and excess coverage triggered, obligating the excess insurer to provide coverage under its policy" (*id.* at 188).

Accordingly, we are still not persuaded by plaintiff's argument that there was an exhaustion under the Swiss Re policy.

■ The motion court correctly applied New York law in deciding the discovery motion. The law of the place where the evidence in question will be introduced at trial or the location of the discovery proceeding is applied when deciding privilege issues (*People v Greenberg*, 50 AD3d 195, 198 [2008], *lv dismissed* 10 NY3d 894 [2008]). As the motion court found, the cooperation clauses in the insurance policies did not operate as waivers of plaintiff's attorney-client and work-product privileges (*see Gulf Ins. Co. v Transatlantic Reins. Co.*, 13 AD3d 278, 279-280

[2004]). We have considered the appealing parties' remaining contentions for affirmative relief and find them unavailing.

Accordingly the orders of the Supreme Court, New York County (Barbara R. Kapnick, J.), entered May 31, 2011, which granted the motions by Arch, St. Paul, Twin City, Lumbermens and Swiss Re for summary judgment dismissing the amended complaint as against them with prejudice, should be affirmed, with costs. The order of the same court and Justice, entered on or about May 31, 2011, which denied the motion by Indian Harbor, Houston and Travelers to compel production of certain documents, should be affirmed, with costs.

GONZALEZ, P.J., ANDRIAS, RICHTER and ABDUS-SALAAM, JJ., concur with DEGRASSE, J.

Orders, Supreme Court, New York County, entered May 31, 2011, affirmed, with costs. Order, same court and Justice, entered on or about May 31, 2011, affirmed, with costs.